Edward J. Greenfield, J.
On the trial of this action, in which plaintiff claimed a commission on the sale of a 5,600-ton floating dry dock, the defendant urged as a defense that in the absence of any agreement in writing for the payment of commission the claim is barred by the Statute of Frauds (General Obligations Law, § 5-701, subd. 10).
Interestingly enough, there appears to be no reported case in which the contention made by the defendant that this statute covers all claims for commissions for the sale of any inventory or fixtures has been passed upon. The Court of Appeals has recently had occasion to rule on the statute, which was formerly subdivision 10 of section 31 of the Personal Property Law. (Minichiello v. Royal Business Funds Corp., 18 N Y 2d 521.) The court held that without a written agreement, a business broker or finder who negotiates the sale of an interest in a business can recover neither for orally stipulated commissi ops nor on a quantum meruit basis. In that case, the negotiations for which compensation was sought involved the sale of all the shares of a corporation which were held by two separate defendants, a transaction which was clearly comprehended within the *153 scope of the “ sale of a business, a business opportunity, or an interest therein ’ ’, even though no defendant individually owned a majority of the stock interest.
In this case we do not have the “ sale of a business or a business opportunity or an interest therein”, but rather the sale of a single fixture formerly used in the business. The question is raised as to whether such a sale is covered by the language of the statute, which embraces not only the sales of real estate, business or business opportunity, but also good will, inventory and fixtures. The statute by its terms voids any agreement not in writing if it: “ 10. Is a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein, or of a business opportunity, business, its good will, inventory, fixtures or an interest therein, including the majority of the voting stock interest in a corporation and including the creating of a partnership interest.” Excepted from the statute are auctioneers, attorneys and licensed real estate brokers.
Read literally, the statute might be deemed to cover virtually any sale by any going business and would stand as an effective bar to a host of unwritten commission arrangements. Thus, a salesman whose job it is to sell the products of a business — literally “ inventory ” or “an interest therein ”— could recover neither traditional commissions nor quantum meruit without a written contract. Further, stockbrokers, who take orders on the telephone for millions of dollars in securities, sales of which quite literally represent the sale of a business or “ an interest therein ”, would be unable to charge their normal commissions without an agreement in writing — an interpretation which would deal a serious blow to long-standing financial practices in New York.
Nevertheless, defendant urges a literal reading of the statute in question — for its dry dock was unquestionably a “ fixture ” which was sold by the defendant. While the sale of a fixture which brought a price of $150,000 might be considered a sale of the major part of some businesses, so far as Bethlehem Steel Corporation was concerned it was only one floating dry dock among 27 owned by a single one of its operating divisions. Its sale did not represent even a small fractional interest in a going business, for even after the sale Bethlehem Steel Corp. had assets remaining of over one billion dollars. (Cf. Cohon & Co. v. Pennsylvania Coal & Coke Corp., 10 A D 2d 667; but, see, Sorge v. Nott, 34 Misc 2d 545; Clivner v. Ackerman, 51 Misc 2d 856.)
*154 Was an interpretation of the statute as sweeping as that urged by the defendant ever intended, when the statute was enacted requiring a writing to cover compensation for negotiating a loan or for negotiating the transfer of real estate or of a business? Questions of legislative intent “ can only be answered by looking to the enactment as a whole, by discerning the purpose and policy underlying the statute, and by giving the words a meaning which serves, rather than defeats, the ends intended by the Legislature.” (Motor Vehicle Acc. Ind. Corp. v. Eisenberg, 18 N Y 2d 1, 3.)
A review of the legislative history of subdivision 10 of section 5-701 of the General Obligations Law and its predecessor, subdivision 10 of section 31 of the Personal Property Law, indicates that the real concern of the sponsors of the legislation was with the problem of “ business finders ” — men who claimed enormous commissions for negotiating the sale of a business, or for negotiating the sale or transfer of all or a substantial portion of its assets, by virtue of having made a telephone call or two to put the parties in touch with each other. (See N. Y. Legis. Doc., 1949, No. 65[G]; 1949 Report of N. Y. Law Rev. Comm., Becommendations and Studies, N. Y. Legis. Doc., 1964, No. 65 [F].)
The Law Bevision Commission made it plain that in proposing the enactment of the statute it was concerned only with sales of a business or business opportunity, and not with sales of inventory or fixtures in the ordinary course of business. It stated: “In recent years there have been a substantial number of reported cases of claims on commissions for services rendered in the sale of a going business or a business opportunity. Under existing law there is no requirement that business brokers’ contracts for commissions be in writing.” (Emphasis added.) (1949 Report of N. Y. Law Rev. Comm., Recommendations and Studies, p. 615.) The study, in fact, disclamed any intention of covering other claimants of commissions arising out of the regular course of business. It was stated (p. 621): “ Other claimants of commissions, such as insurance brokers, commission merchants, auctioneers and others, seem not fairly within the scope of the proposal studied; their claims are more likely to rise out of a regular course of dealing, and any legislation requiring written memoranda would have to fit into a somewhat different framework of existing New York statutes.” (p. 621.)
The problems involved in the sale of a going business were closely related to transfers of interests in real estate, which were often a substantial asset of the business being transferred. *155 That was the specific problem being dealt with and not ordinary sales of a part of the inventory or fixtures. The 1949 study briefly considered brokerage contracts concerning sales of personal property and noted that these “ ordinarily are outside the scope of the Statute of Frauds provision relating to the sales of goods” (p. 636). In 1964 the Law Revision Commission recommended a further change to make it explicit that the statute covered business “finders” as well as “ brokers ” and that it barred recovery in quantum meruit as well as on an express contract. (N. Y. Legis. Doc., 1964, No. 65F.)
In all the legislative history there is nothing to indicate that anyone had in mind requiring a writing for commissions on the sale of individual fixtures being discarded by an operating business, or of stock in trade taken out of inventory in the ordinary course of business. The ambiguity was created by the use in the statute of the words ‘ ‘ good will, inventory, fixtures or an interest therein.” The wording appears to have been prompted to cover situations such as that exemplified in the case of Weingast v. Rialto Pastry Shop (243 N. Y. 113). In that case plaintiff was a business broker who agreed to sell the defendant’s restaurant as a going concern, including the restaurant’s ownership of a lease with six more years to run. The Court of Appeals held that the licensing statute with respect to real estate which then existed did not apply, since the lease was just one element in the value of the restaurant, which held it as part of the “ good will ”. It would thus seem apparent that the words “ good will, inventory, fixtures or an interest therein ’ ’ are descriptive of the constituent elements of a going business, and that there was no intention to have the statute cover fractionalized segments of such elements apart from the sale of a going business or a substantial interest therein.
'. There is no case anywhere which interprets the statute in the broad manner for which defendant' contends. The only reported ease touching on this point is Walzer v. Leggett & Co. 201 N. Y. S. 2d 344, 346 [Sup. Ct. N. Y. County, I960]). There Judge Heoht, denying a motion to dismiss a broker’s complaint, held issues existed as to the applicability of the statute, and mentioned in passing that the sale of warehoused goods and equipment “ does not establish that the sale of a business was involved ’ ’. He thus indicated his belief that the Statute of Frauds provisions did not cover sales of inventory or fixtures in the regular course, but only those sales which were incidental to the sale of a business.
*156 A careful search of the statutes of other States reveals no reported situation in which the Statute of Frauds was held to cover sales of fixtures or inventory other than those being transferred in bulk with an entire business. The statutes of such States are invariably extensions of or mergers into the licensing provisions covering real estate brokers to which the additional definition of a business opportunity broker has been added. In the definition of such a broker the States of Washington, Michigan, and Louisiana cover' ‘1 business opportunity and good will ”. (Wash. Rev. Code Ann., § 18.85.010, subd. [5]; Mich. Stat. Ann., § 19.792; La. Rev. Stat. Ann., § 37:1431, subd. [2].) California and Oregon cover “ business, business opportunity or interest therein or the good will of an existing business ”, (Cal. Business and Professions Code Ann., § 10252, repealed by L. 1965, ch. 172, § 13; Ore. Rev. Stat., § 696.610). Only two States besides New York include in their statute dealing with the sales of business opportunities the words “ good will, inventory, fixtures or an interest therein ”. (Wis. Stat. Ann., § 136.01, subd. [2], par. [e] and subd. [4], par. [b], repealed by L. 1963, ch. 366, § 3; Minn. Stat. Ann., § 8201, subds. 4 and 6). New York appears to have modeled its language upon the Wisconsin statute, with no discussion whatever of the effect of including the words “ inventory ” and “ fixtures ”.
I therefore hold that the terms “inventory”, “fixtures”, and “ interest in a business ” as sued in subdivision 10 of section 5-701 of the G-eneral Obligations Law do not encompass individual sales out of inventory in the regular course of business, nor of individual fixtures or groups of fixtures which are disposed of when no longer needed in continuing business operations. What obviously must be intended to be covered by the statute is something in the nature of the sale of an entire business or a substantial part thereof— a sale of assets constituting a going business or capable of forming the nucleus of a going business — an organic entity and not a dismembered component. The motion to dismiss the complaint as barred by the Statute of Frauds is therefore denied.
While plaintiff might be entitled to a recovery for services rendered herein in negotiating the sale of a floating dry dock even without a written agreement providing for his compensation, he must nevertheless show that he produced a buyer for the dry dock who was ready, willing and able to purchase on the defendant’s terms.
The evidence indicates that the ultimate purchaser of the dry dock was the Perth Amboy Dry Dock Company. Some *157 eight months before the sale was consummated, when defendant’s asking price was $450,000, the plaintiff informed defendant that Perth Amboy Dry Dock might be interested and that “ at a price range of $125,000/$150,000 they would give serious consideration to entering negotiations ”. Defendant refused to modify its asking price, and Perth Amboy indicated it had no further interest.
The evidence further shows that thereafter plaintiff did nothing further to bring the parties closer together. He was not the exclusive broker on the deal, for there were a number of brokers who were seeking to earn a commission on the sale of the dry dock. In fact one of them, Thibodeaux by name, had submitted a series of specific offers from Perth Amboy Dry Dock, not merely general expressions of interest, and finally, after considerable negotiation on price and terms, a price of $150,000 cash was agreed upon. All these negotiations were handled by Thibodeaux, and the principals of the Perth Amboy Dry Dock Company testified that while plaintiff was one of several brokers who had discussed the availability of the dry dock with them, only Thibodeaux, and not the plaintiff, had been authorized to relay any firm offers they made to the defendant.
Under the circumstances, the court finds plaintiff has failed to sustain his burden of proving that he was the procuring cause of the sale. At best, he relayed an expression of interest, and a prediction, not an offer, albeit a remarkably accurate prediction, of the price range in which the sale might be closed. No specific terms were put forth — nothing which, on acceptance, would ripen into a contract — merely an invitation to negotiate. Although defendant later was persuaded to change its position, the suggestions of the plaintiff were not then acceptable to it. (See Globus Realty Corp. v. Fleetwood Terrace, 275 App. Div. 34, affd. 301 N. Y. 783; Finnegan & Di Zerega v. Bank of New York, 277 App. Div. 562.) “It makes no difference that a second broker may procure a purchaser on less favorable terms than those originally given to the first broker by the owner of the property, as long as the first broker has been unsuccessful in procuring the terms which he was authorized to obtain. (Freedman v. Havemeyer, 37 App. Div. 518.) ” (Basch v. Salvation Army, 244 App. Div. 230, 233.) See, also, Sibbald v. Bethlehem Iron Co. (83 N. Y. 378) and Levy v. Hayman (8 A D 2d 854) where the court stated When a broker opens negotiations between parties but, failing to bring the customer to the terms as specified by the owner, abandons them and when the owner subsequently *158 sells to the same person, the owner is not liable to the broker for commissions.”
Accordingly, upon all the evidence, the court finds" that although plaintiff is not barred from recovering commissions for the sale of the dry dock, one of defendant’s “fixtures”, because of. lack of a written agreement, he was not in fact the procuring cause of the sale. Judgment for the defendant.