Melvin **HILLER**, Appellant, and Philip
Stoller (57) (Stoller Dismissed)

v.

The **FRANKLIN MINT, INC.**
and
Joseph M. Segal.

No. 72–2019.

United States Court of Appeals,
Third Circuit.

Argued June 5, 1973.

Decided July 26, 1973.

————◆————

Tom P. Monteverde, Max L. Lieberman, Pelino, Wasserstrom, Chucas & Monteverde, Philadelphia, Pa., for appellant.

Waters, Fleer, Cooper & Gallager, Daniel I. Murphy, Bolger & Picker, Carl S. Tannenbaum, Philadelphia, Pa., for appellees.

Before SEITZ, Chief Judge, and STALEY and HUNTER, Circuit Judges.

## OPINION OF THE COURT.

STALEY, Circuit Judge.

This action was commenced in the district court by a complaint filed on behalf of Melvin Hiller, a New York resident, and Philip Stoller,[1] which alleged that the Pennsylvania appellees, Joseph Segel and The Franklin Mint, Inc.,[2] breached an oral contract to pay Hiller a finder's fee. Jurisdiction rested on diversity and an amount in controversy in excess of $10,000. The appellees moved for summary judgment, asserting that the alleged contract was governed by New York law and that under the relevant New York statute of frauds, it was void. The district court granted the motion.

On appeal Hiller argues that the district court erred in granting summary judgment to the appellees. He maintains, inter alia, that neither the law of New York nor that of Pennsylvania precludes proof of the alleged oral contract. We agree and, therefore, reverse the dis-

trict court's grant of summary judgment.

In paragraph 11 of his amended complaint, Hiller alleged the following:

"On February 29, 1968, at GNC's then place of business in Yeadon, Pennsylvania, Segal, acting on behalf of himself and GNC, orally promised plaintiff Hiller that, if Hiller could find a source of the additional funds which GNC required on terms more favorable to GNC than those proposed by Weis, Voisin,[3] Hiller would be granted an option to purchase 5,000 shares of GNC stock at its then market value of $30 per share, which option would be exercisable at any time within two years, and Hiller orally agreed to undertake to find such a source."

Hiller introduced appellee Segel to C. E. Unterberg, Towbin, a New York brokerage house. This firm subsequently committed itself to and ultimately arranged for the placement of 33,000 shares of common stock of The Franklin Mint. The appellees deny the existence of the alleged oral offer. However, their denial at this stage of the proceedings is immaterial. The question is, at this point, whether the district court erred in determining that the appellant was barred from proving the alleged oral contract.

Operating on the assumption that New York law and Pennsylvania law were different with respect to the contractual issue before it, the district court approached the choice of law issue. It analyzed what it conceived to be the relevant facts in determining what law was applicable in this multistate case. The court determined that New York had more significant contacts with the alleged contract than did Pennsylvania and that its law was applicable. We believe that the district court's initial determination that

---

1. Stoller's claim was dismissed with prejudice by the district court for failure to answer certain interrogatories.

2. Prior to May 31, 1968, The Franklin Mint's corporate name was General Numismatics Corporation.

3. Segel had accepted a Letter of Intent from this New York brokerage firm. It was the Weis, Voisin, and Cannon offer that Hiller sought to better.

**50**

a different result would be obtained under New York law than would be under Pennsylvania law was erroneous.

■ The New York statute of frauds which the district court held to be a bar to the appellant's claim provides in pertinent part as follows:

> "Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:
>
> \* \* \* \* \* \*
>
> "10. Is a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein, *or of a business opportunity, business, its good will, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation* and including the creating of a partnership interest. 'Negotiating' includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction. This provision shall apply to a contract implied in fact or in law to pay reasonable compensation \* \* \*." (Emphasis added.) General Obligations Law, 23A McKinney's Consolidated Laws of New York, c. 24–A, § 5–701 (1964).

This statute bars the appellant's claim if that which Hiller negotiated was the sale of a "business opportunity" or a "business." We believe that it was not.

We agree with one court's observation that "if the statute were literally construed it might be deemed to cover each individual sale of any part of a business or its inventory, as well as every fixture owned by that business." Atlas Steamship Chartering Corp. v. Dillingham Corp., 314 F.Supp. 1118, 1121 (S.D.N.Y. 1970). New York has not so construed this statute.

■ The transfer of the majority of the voting stock of a corporation has been deemed to fall within the meaning of "business" or "business opportunity." Clivner v. Ackerman, 51 Misc.2d 856, 274 N.Y.S.2d 112 (1966). Further, when a single seller did not own a majority of the stock interest but he and another seller combined in the transaction did, the statute was held applicable. Minichiello v. Royal Business Funds Corp., 18 N.Y. 2d 521, 277 N.Y.S.2d 268, 223 N.E.2d 793 (1966), cert. denied, 389 U.S. 820, 88 S.Ct. 41, 19 L.Ed.2d 72 (1967). However, it is clear that a majority of the voting stock need not be involved to fall within the purview of § 5–701.

> "While transfer of the majority of the voting stock of a corporation must always be deemed transfer of a business opportunity, the converse is not true, since, conceivably, transfer of a minority interest in a corporation would afford the recipient no opportunity to engage in the business pursuits of the corporation. However, where \* \* \* the transfer of the minority interest is coupled with other circumstances so as to clothe the purchaser with the right to dictate the business policies of the corporation, it exceeds the realm of simple investment and becomes a transfer of a business or business opportunity \* \* \*." Clivner v. Ackerman, supra, 274 N.Y.S.2d at 114; see Karlin v. Avis, 457 F.2d 57 (C.A.2 1972).

Another court has stated: "What obviously must be intended to be covered by the statute is something in the nature of the sale of an entire business or a substantial part thereof \* \* \*." Lounsbury v. Bethlehem Steel Corp., 53 Misc.2d 151, 277 N.Y.S.2d 700, 705 (1967).

In the instant case Hiller allegedly arranged for the placement of 33,000 shares of The Franklin Mint stock. This did not constitute a majority interest. Nor is there any indication in the record that these shares were "coupled with other circumstances so as to clothe the purchaser with the right to dictate the business policies of the corporation." See Clivner, supra. We, therefore, con-

clude that § 5–701 does not bar the appellant's claim.

■ Since Hiller alleges that he was to be compensated for his efforts on behalf of the appellees with a stock option another New York statute of frauds could arguably bar his claim. That statute with certain exceptions not here relevant provides that contracts for the sale of securities must be in writing to be enforceable. Uniform Commercial Code, 62½ McKinney's Consolidated Laws of New York Ann. § 8–319 (1964). New York's highest court has not ruled on the issue presented to this court. We must, therefore, apply the rule New York would apply if faced with this issue. Tyminski v. United States, 481 F.2d 257 (C.A. 3, 1973). We believe that New York would consider Hiller's alleged arrangement with Segel to be a contract of employment rather than a sale, and hence it would not be barred by § 8–319. This is how Pennsylvania construed an identical Pennsylvania statute. Baldassarre v. Singer, 444 Pa. 100, 282 A.2d 262 (1971); see Uniform Commercial Code, 12A Purdon's Pa.Stat.Ann. § 8–319 (1970). In *Baldassarre* a transfer of stock pursuant to an employment contract was held not to be a sale of securities. In short, appellant's claim of an oral contract is not barred by any New York statute of frauds. We turn now to an analysis of the Pennsylvania statute.

■ As we have noted above, the Pennsylvania statute of frauds dealing with the sale of securities has been held inapplicable to contracts of employment. *Baldassarre,* supra. It is Pennsylvania's view that transfers of securities pursuant to an employment contract simply are not sales. Therefore, appellant's claim of an oral contract in this case would not be barred in Pennsylvania's courts.

■ Since both New York and Pennsylvania would permit the appellant to offer proof of the alleged oral contract, there is no conflict of law. An analysis by the district court with respect to the significance of contacts in this case was unnecessary.

> "When certain contacts involving a contract are located in two or more states with identical local law rules on the issue in question, the case will be treated for choice-of-law purposes as if these contacts were grouped in a single state." Restatement of Conflicts 2d, § 186, comment c.

The forum state in this case was Pennsylvania, and its law should have been applied. See McSwain v. McSwain, 420 Pa. 86, 215 A.2d 677 (1966).

The judgment of the district court will be reversed and the cause remanded for further proceedings consistent with this opinion.