Jasen, J.
The plaintiff, Intercontinental Planning, Limited is a New York corporation engaged in the business of bringing-together European and American firms desiring to enter into business relationships. By this action plaintiff seeks to recover a finder’s fee of $2,781,848 for its alleged services with respect to the acquisition in 1962 of a New Jersey electronics corporation, Daystrom, Incorporated, by defendant Schlumberger, Limited.[1] Defendants deny that plaintiff played any role with respect to this acquisition, and assert that neither they nor Daystrom ever requested or agreed to pay compensation for any services plaintiff may have rendered concerning this particular acquisition.
*376 This appeal is limited solely to plaintiff’s cause of action in contract for recovery as a finder. Special Term granted defendants’ motion for summary judgment upon the ground that plaintiff’s action was barred by the New York Statute of Frauds. The Appellate Division unanimously affirmed the dismissal of plaintiff’s cause of action in contract.[2]
It is firmly established, of course, that summary judgment may not be granted whenever the pleadings raise material and triable issues of fact. (Sillman v. Twentieth Century-Fox, 3 N Y 2d 395, 404.) We consider the evidentiary facts alleged in the light most favorable to plaintiff on this appeal from the grant of summary judgment to defendants. We conclude, however, that no triable issue of fact is raised when the evidentiary facts are so weighed.
The affidavits submitted upon the motion for summary judgment show that plaintiff’s president, Salomon Jakob[3], met Jean Royer, the president of a small French electronics firm, Rochar Electronique, at a trade fair in New York City in May, 1960. Mr. Royer requested Mr. Jakob to introduce him to “ American companies which had similar manufacturing capabilities and desired a foreign affiliation.” Mr. Jakob undertook to locate interested American firms by placing an advertisement in the May 9, 1960 issue of the Wall Street Journal. Daystrom responded to this advertisement.
On May 20,1960, Mr. Jakob introduced the presidents of Daystrom and Rochar at a luncheon meeting at the Pinnacle Club in New York City. Prior to this meeting, Daystrom agreed in principle to pay plaintiff a finder’s fee should a suitable business relationship be established with Rochar. Negotiations were held at this meeting concerning the establishment of a business relationship between Daystrom and Rochar. Both principals indicated their readiness to pay plaintiff a finder’s fee should an 1 £ active business relationship ’ ’ be concluded between the two firms.[4]
*377 Between May 20, 1960 and June 201, 1960, several letters and telephone calls passed between Mr. Jakob in his New York office and Daystrom’s president in his New Jersey office concerning the amount of the finder’s fee to which plaintiff would be entitled should the business relationship be 'Concluded. Daystrom’s attorney drafted a proposed agreement, dated June 20, 1960, establishing the terms and amount of the finder’s fee. This draft agreement was mailed to plaintiff’s New York office. Mr. Jakob then traveled to New Jersey on June 27, 1960, and signed the agreement in Daystrom’s New Jersey office. In pertinent part, this agreement states:
‘1 As you requested, I am writing to confirm my understanding of the terms of our agreement reached through our discussions and telephone conversations by reason of which you have been acting in behalf of Daystrom, Incorporated with a view toward the acquisition of Rochar Electronique.
“ Should we acquire the company in question by purchase of its stock or assets, we shall pay you a commission equal to * * *
‘ ‘ This shall be the entire agreement between us and if the foregoing is acceptable to you, please execute the acceptance noted below on one copy of this letter and return the same to us, whereupon it shall constitute an agreement on the terms stated herein.
Very truly yours,
Is/ Thomas Roy J ones Thomas Roy Jones President
Accepted:
By S. Jakob June 27,1960 ”
The proposed acquisition of Rochar by Daystrom did not take place, however, as Rochar was acquired instead by defendant Schlumberger in July, 1960. Thereafter, Mr. Jakob.“ encouraged ” Daystrom to negotiate with defendant Schlumberger.
Plaintiff alleges that, on November 22,1960, Daystrom’s president orally agreed to extend the terms of the written agreement to include a merger between defendant Schlumberger and Day *378 strom.[5] Defendant Schlumberger acquired Daystrom in February, 1962, by purchasing its assets.
Plaintiff contends that the written finder’s fee agreement, dated June 20, 1960, when interpreted in the light of other documents, establishes its right to compensation for the merger of defendant Schlumberger and Daystrom and constitutes an agreement sufficient to meet the New York Statute of Frauds. We note that plaintiff concedes that none of these other writings satisfies the applicable section of the Statute of Frauds (Personal Property Law, former ■§ 31, subd. 10, now General Obligations Law, § 5-701, subd. 10) independent of the written agreement.
At the time the events in dispute occurred, subdivision 10 of former section 31 of the Personal Property Law read:
“Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking;
“ 10. Is a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein, or of a business opportunity, business, its good will, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation and including the creating of a partnership interest. This provision shall not apply to a contract to pay compensation to an auctioneer, an attorney at law, or a duly licensed real estate broker or real estate salesman. ”
It is settled that former section 31 (subd. 10) applies to claims for fees by finders as well as brokers. (Minichiello v. Royal Business Funds Corp., 18 N Y 2d 521, 527.) Plaintiff’s contract cause of action is, therefore, encompassed by former section 31 (subd. 10), the applicable section of the Statute of Frauds.
We conclude that the writings relied upon by plaintiff are insufficient to constitute an enforceable agreement under subdivision 10 of former section 31.
“ [I]n a contract action a memorandum sufficient to meet the requirements of the Statute of Frauds must contain expressly *379 or by reasonable implication all the material terms of the agreement, including the rate of compensation if there has been agreement on that matter ”, (Cohon & Co. v. Russell, 23 N Y 2d 569, 575; Poel v. Brunswick-Balke-Collender Co., 216 N. Y. 310, 314; Restatement, 2d, Contracts, § 207 [Tent. Draft No. 4, 1968]; cf. Matter of Levin, 302 N. Y. 535, 541; cf. Stulsaft v. Mercer Tube & Mfg. Co., 288 N. Y. 255, 258.) It is true that a memorandum sufficient to satisfy the Statute of Frauds need not be contained in a single document. Thus, the terms of an agreement between the parties may be established by a combination of signed and unsigned documents, letters or other writings provided ‘ ‘ at least one writing, the one establishing a contractual relationship between the parties, must bear the signature of the party to be charged [or his authorized agent], while the unsigned document must on its face refer to the same transaction as that set forth in the one that was signed.” (Crabtree v. Elizabeth Arden Sales Corp., 305 N. Y. 48, 56.) Nevertheless, it is equally well settled that extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face. (Tramco Ind. v. Broad Hollow Assoc., 23 N Y 2d 841; Rodolitz v. Neptune Paper Prods., 22 N Y 2d 383; Tobin v. Union News Co., 18 A D 2d 243, affd. 13 N Y 2d 1155; cf. General Phoenix Corp. v. Cabot, 300 N. Y. 87, 92; cf. Laskey v. Rubel Corp., 303 N. Y. 69, 71.)
The June 20, 1960 written agreement purports to be the complete agreement of the parties concerning plaintiff’s right to a finder’s fee and is signed by both parties. This agreement is clear and unambiguous on its face and specifically refers to the acquisition of “Rochar Electronique ” by “Daystrom, Incorporated”— and not to the later purchase of Daystrom by defendant 'Schlumberger, Limited in February, 1962. It follows that plaintiff receives no support for its claim to a finder’s fee for the merger of Daystrom and Schlumberger from, the terms of the June 20 written agreement. Plaintiff cannot resort to extrinsic writings, none of which independently satisfies the Statute of Frauds, to create an ambiguity in the unambiguous and complete written agreement. (Tramco Ind. v. Broad Hollow Assoc., supra.)
Plaintiff, however, also alleges that Daystrom later orally agreed on November 22, 1960, to extend the terms of the June, *380 I960 written finder’s fee agreement to include its proposed acquisition by defendant Schlumberger, Limited.[6] A fortiori, this oral modification of the written agreement also fails to comply .with the Statute of Frauds (Personal Property Law, former § 31, subd. 10) and cannot be enforced.
Special Term correctly concluded, therefore, that there was ‘ ‘ no written note or memorandum evidencing any agreement with respect to the acquisition in question signed by the party to be charged, other than a document which, in clear and unambiguous language, refers solely to a prior contemplated acquisition. ”
Plaintiff’s contract cause of action is inadequate, therefore, if New York law is applied. Plaintiff, alternatively, contends, however, that New Jersey’s laws contain no Statute of Frauds applicable to this case, and should be applied under a “ grouping of contacts ” analysis of the choice of law. In any event, plaintiff argues, it is entitled to a full trial to show which jurisdiction has the most significant contacts with the litigation.
Our research indicates that New Jersey’s Statute of Frauds does not apply to finder’s fee agreements pertaining to the sale of businesses. (Of. N. J. Stat. Ann. 25:1-5; 25:1-9; Tanner Assoc, v. Giraldo, 33 N. J. 51; Fontana v. Polish Nat. Alliance of Brooklyn, 130 N. J. L. 503.) Therefore, plaintiff’s agreements are unenforceable under New York law while New Jersey’s Statute of Frauds does not bar an action on such an agreement.[7]
The contacts of the parties with New York and New Jersey are essentially undisputed, except for the alleged oral modification of the written agreement in November, 1960, to include the proposed Daystrom-Schlumberger merger. However, we conclude that New York law should be applied when the facts relating to the choice of law issue are considered in the light most favorable to plaintiff. It follows that the matter is determinable on the affidavits, as a matter of law, and there is no issue of *381 fact requiring a hearing concerning the applicable law (Cf. Matter of Bulova, 14 A D 2d 249.)
Whether or not a contract, valid and enforceable in the jurisdiction where made, is subject to the Statute of Frauds of a jurisdiction where an action is brought upon the contract is a question not yet settled in this 'State. This court has recognized the existence of the problem and the conflict of authority on this point, but thus far has not found it necessary to resolve it. (Rubin v. Irving Trust Co., 305 N. Y. 288, 297-298; Russell v. Societe Anonyme des Etablissements Aeroxon, 268 N. Y. 173, 180-181; Reilly v. Steinhart, 217 N. Y. 549, 553; cf. 49 Am. Jur., Statute of Frauds [1968 Supp.], §§ 3.1, 3.2, 3.3; cf. Ann., Statute of Frauds and Conflict of Laws, 105 A. L. B. 652-681, supp. 161 A. L. B. 820-824; cf. Currie, Ehrenzweig and the Statute of Frauds: An Inquiry into the “Rule of Validation ”, 18 Okla. L. Rev. 243 [1965]; cf. Ehrenzweig, The Statute of Frauds in the Conflict of Laws: The Basic Buie of Validation, 59 Col. L. Rev. 874 [1959].)
Traditionally courts have arrived at their conclusion concerning the applicable law, i.e., lex loci or lex fori, by characterizing the Statute of Frauds as substantive or procedural and evidentiary. “If it is substantive, then the law of the place of contracting applies, and though the forum has its own Statute of Frauds, the latter would not be applicable. If it is procedural or evidentiary then the law of the forum applies though the contract was valid and enforceable where made.” (Russell v. Societe Anonyme des Etablissements Aeroxon, supra, p. 181.) “ Indeed the statute may even be regarded as having a dual nature—both substantive and procedural.” (Rubin v. Irving Trust Co., supra, p. 298.) But this attempt to characterize the Statute of Frauds as procedural or substantive, concerned as it is with amorphous legal conclusions, does little more than restate the problem and has even less relevance to our modern approach to the conflict of laws.
However, as we view this case, it is unnecessary to characterize the Statute of Frauds as either substantive or procedural since New York law should be applied in either event. If the statute be viewed as procedural, there is no problem since the law of the forum would be applied. Likewise, New York’s Statute of Frauds would be applied as the law of the State whose *382 law governs generally if the statute be considered substantive since New York has the paramount interest in the application of its law in this case. (Cf. Matter of Crichton, 20 N Y 2d 124,133; Matter of Clark, 21 N Y 2d 478, 486; cf. Miller v. Miller, 22 N Y 2d 12,15-16.)
The traditional view of the choice of law rules concerning contracts where the parties have not expressed their choice of law in their agreement was that matters bearing upon the execution, interpretation, and validity of contracts are determined by the law of the place where the contract, is made while matters concerned with its performance are regulated by the law of the place where the contract, by its terms, is to be performed. (Swift & Co. v. Bankers Trust Co., 280 N. Y. 135, 141; Union Nat. Bank v. Chapman, 169 N. Y. 538, 543; cf. Restatement, Conflict of Laws, §§ 332, 358; cf. Goodrich, Conflict of Laws [3d ed., 1949], §§ 109, 114.) A contract was deemed made in the State where the last act necessary to make it binding takes place according to the law of contracts. (Cf. Goodrich, supra, § 107.)
However, the traditional view has been rejected by this court in favor of an approach which ‘1 gives to the place 1 having the-most interest in the problem ’ paramount control over the legal issues arising out of a particular factual context, thus allowing the forum to apply the policy of the jurisdiction ‘ most intimately concerned with the outcome of [the] particular litigation ’ (Auten v. Auten, 308 N. Y. 155, 161.) “ [T]he rule which has evolved clearly in our most recent decisions is that the law of the jurisdiction having the greatest interest in the litigation will be applied and that the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.” (Miller v. Miller, supra, pp. 15-16; Matter of Crichton, supra, p. 133; Matter of Clark, supra, pp. 485-486.)
It is clear that New York has the paramount, interest in the application of its law when the contacts which New Jersey and this State have with the instant controversy are examined in relation to the policies and purposes to be vindicated by the conflicting laws.
The purpose of the New York statute is manifest from an examination of its legislative history. The provision extending the Statute of Frauds to cover business brokerage contracts *383 and agreements for finder’s fees (Personal Property Law, former § 31, subd. 10, now General Obligations Law, § 5-70(1, subd. 10) was first enacted in 1949 upon the recommendation of the Law Revision Commission. In its report to the Legislature, the commission stated its reason for proposing subdivision 10 of section 31: “In recent years there have been a substantial number of reported cases of claims for commissions for services rendered in the sale of a going business or a business opportunity. Under existing law there is no requirement that business brokers’ contracts for commissions be in writing. The nature of the transactions is such that, in the absence of the requirement of a writing, unfounded and multiple claims for commissions are frequently asserted, and employers often seek to escape liability by denying the fact of employment. These controversies are commonly resolved by juries on conflicting testimony, with the consequent danger of erroneous verdicts.” (1949 Report of N. Y. Law Rev. Comm. [N. Y. Legis. Doc., 1949, No. 65 (G)], p. 615.)
We recently reviewed the legislative history of subdivision 10 of former section 31 and concluded that the report of the Law Revision Commission reflects the purpose of the statute. (Minichiello v. Royal Business Funds Corp., supra, 526-527.) It thus appears that the statute was based at least in part upon the premise that the ‘ ‘ danger of erroneous verdicts ’ ’ in allowing juries to determine claims for brokerage and finder’s fees on oral testimony warranted the writing requirement. (Cf. Minichiello v. Royal Business Funds Corp., supra, pp. 526-527.) It follows from the purpose of the statute that one of the policies embraced by this provision is to protect the principals in the sale of a business interest from the type of claim being asserted here —■ a claim for a $2,780,000 finder’s fee not supported by the written evidence.
This policy would include foreign principals who utilize New York brokers or finders because of the nature of the brokerage business as it is conducted here. It. is common knowledge that New York is a national and international center for the purchase and sale of businesses and interests therein. We conclude therefore that the Legislature in enacting subdivision 10 of former section 31 intended to protect not only its own residents, but also those who come into New York and take advantage of our *384 position as an international clearing house and market place. This is true because of all the jurisdictions involved, New York law affords the foreign principals the greatest degree of protection against the unfounded claims of brokers and finders. This encourages the use of New York brokers and finders by foreign principals and contributes to the economic development of our State. Our brokers and finders need only ensure that their agreements for compensation comply with the Statute of Frauds to receive the benefits of New York’s position as a business center.
It is clear that the instant dispute has sufficient contacts with New York to give our State a substantial interest in applying its policy. Plaintiff is a New York corporation and its international finder’s business centers in this State. Moreover, plaintiff’s representation of Rochar derived from a New York meeting with Rochar’s president. Plaintiff solicited Daystrom’s interest in Rochar through an advertisement placed in a New York newspaper, and Mr. Jakob introduced the presidents of the two original principals (Rochar and Daystrom) at a meeting in a New York restaurant. At this New York meeting the principals agreed to compensate plaintiff with a finder’s fee if a business relationship was concluded between Rochar and Daystrom. The remaining contacts leading up to the execution of the written finder’s fee agreement involve letters and telephone calls emanating from plaintiff’s New York office and the New Jersey office of Daystrom. It is therefore clear that the services for which plaintiff claims compensation were substantially rendered in New York, and that our State has a substantial relationship with the formation and negotiation of the finder’s fee agreement.[8] In fact, plaintiff concedes in its brief, “ Were it not for the ordinary writing requirement of the Statute of Frauds, there can be no question but that a competent agreement [to compensate plaintiff] existed by June 17, I960.”[9] These contacts give New York a substantial interest *385 in applying its own law in view of the policy underlying the applicable provision of our Statute of Frauds to protect principals in business transactions from unfounded claims and thereby encourage use of New York as a national and international business center. (Cf. Restatement 2d, Conflict of Laws [Proposed Official Draft, Part II, 1968, § 188, Comment on subsection (2), pp. 206-210].)
On the other hand, New Jersey’s Statute of Frauds doe's not apply to brokerage or finder’s fee agreements pertaining to the sale of businesses. (Cf. N. J. Stat. Ann. 25:1-5; 25:1-9; Tanner Assoc, v. Ciraldo, supra; Fontana v. Polish Nat. Alliance of Brooklyn, supra.) The general purpose underlying a Statute of Frauds can be characterized as the protection of parties who are sued for alleged promises informally made or to protect the enacting State’s courts from perjury and prevent their use as instruments of extortion. (Cf. Fontana v. Polish Nat. Alliance of Brooklyn, 130 N. J. L. 503 supra; cf. Currie, Ehrenzweig and the Statute of Frauds: An Inquiry into the 1 ‘ Rule of Validation ”, 18 Okla. L. Rev. 243, 248-249, supra.) The latter policy, that of regulating the administration of justice in the courts of the enacting State, is inapplicable when the action is brought in another State. New Jersey, therefore, has no interest in protecting the New York courts from perjury. The policy of protecting the enacting State’s defendants, of course, survives even though a contract action be brought in another jurisdiction. Here, Daystrom was incorporated in New Jersey and had its business office in that State. However, New Jersey has no interest in having its lack of protection for its residents used to establish their liability in a suit brought by residents of other jurisdictions when the laws of the forum State offer a complete defense to the action. It follows from this analysis that no true conflict of law exists since the proposed exception to the local law of the forum would defeat a legitimate interest of the forum State without serving a legitimate interest of any other State. (See, e.g., Traynor, Is This Conflict Really Necessary?, 37 Texas L. Rev. 657 [1959] ; Currie, Survival of Actions: Adjudication versus Automation in the Conflict of Laws, 10 Stan. L. Rev. 205 [1958] ; Currie, On the Displacement of The Law of The Forum, 58 Col. L. Rev. 964 [1958] ; Currie, Selected Essays on the Conflict of Laws; Cavers, The Choice of Law Process *386 [1965]; Currie, Comments on Babcock v. Jackson, 63 Col. L. Rev. 1212 [1963!].)
The courts below, therefore, properly applied the New York Statute of Frauds to bar plaintiff’s cause of action.
Accordingly, the order appealed from should be affirmed, with costs.

. Daystrom was liquidated subsequent to the transactions at issue in this case. Defendant Daystrom, Incorporated, a Texas corporation, has assumed its liabilities and defendant Schlumberger has guaranteed them. Daystrom (New Jersey) is hereafter referred to -as Daystrom since defendant Daystrom (Texas) has no connection with the facts giving rise to this action.

. The Appellate Division modified portions of Special Term’s order relating to other causes of action not pertinent on this appeal.

. Mr. Jakob was also plaintiff's sole stockholder and conducted its business from his Manhattan office.

. At this time, Rochar was engaged in advanced merger negotiations with defendant Schlumberger.

. This allegedly occurred at a meeting in Daystrom’s New Jersey offices.

. The contemplated acquisition of Rochar by Daystrom to which the June written finder’s fee .agreement refers was impossible at this time since Rochar had been merged into defendant Schlumberger, Limited in July, 1960.

. Defendant 'Schlumberger, Limited is a Netherlands Antilles corporation and Rochar Electronique was a French corporation. No party, however, contends that the law of France or the Netherlands Antilles should be applied in this case.

. The place of the actual merger negotiations between the principals is of no significance, since our sole concern in this case is with the agreement concerning plaintiff’s right to a finder’s fee and not the eventual merger of defendant Sohlumberger, Limited and Daystrom.

. This is prior to the execution of the written finder’s fee agreement, dated June 20, 1960, by plaintiff in New Jersey on June 27, 1960.