GAEA PALLAVICINI, Respondent, *v.* INTERNATIONAL TELEPHONE AND TELEGRAPH CORPORATION, Defendant, and SHERATON INTERNATIONAL, INC., Appellant.

First Department, March 1, 1973.

*Macdonald Flinn* of counsel (*Laura Banfield, Norman Friedman* and *Allan Gropper* with him on the brief; *White & Case,* attorneys), for appellant.

*Clarence S. Barasch* for respondent.

McGIVERN, J. P. This appeal comes to us from the denial of summary judgment by Special Term, Supreme Court, New York County (KORN, J.), brought on by the defendant, Sheraton International. The plaintiff is one, Gaea Pallavicini, a resident of Rome and of Liechtenstein, who, as an accomplished woman of business, seems to peregrinate through Europe, Latin America, and not infrequently, the United States. She, an unlicensed broker, seeks to recover in New York a commission of $660,000 for services allegedly rendered in connection with Sheraton's acquisition of the Hotel Maria Isabel. in Mexico City, the owner of which was a Mexican corporation, the dominant figure of which was Antenor Patino, a native of Bolivia, but also a resident of Portugal and France.

.Special Term has opined that the activities of Madame Pallavicini in New York, relating to the sale, were purely coincidental, that New York never became " the center of gravity ", and that she did not " assist " the negotiations. We disagree.

The story begins in March of 1969, when Madame Pallavicini attended a gathering of the international jet set at a celebration of the opening of a new Sheraton Hotel in Beverly Hills, California. There, she met Mr. Boonisar, Chairman of Sheraton, . and, after the ball was over, enroute to New York on a chartered plane, the twain discussed their mutual interest in the Hotel Maria Isabel. Madame Pallavicini, it seems, had a written agreement with Patino, whereby she was to be compensated by 2% of the sales price of the hotel if the negotiations in which she was involved proved to be successful; and the Sheraton organization was anxious to acquire the hotel, although the negotiators had, up to that time, been separated by several million dollars and the negotiations were suspended. According to the plaintiff, Boonisar asked her aid in rekindling the embers of the negotiations, and she agreed. Quoth the lady: " The one thing I would like you to do, the moment we get off the plane will you contact Mr. [Patino] because it is rather urgent ". Thus spoke Boonisar, she said.

And from the River House, Manhattan, where she sojourned for two weeks, that is just what she tried to do. Although she also narrated that her New York plans included a rendezvous with her fiancé, which, unfortunately, went amiss. Parting company with Boonisar at the airport, on the evening of **March**

29, 1969, on the morrow she placed a call to Patino in Paris; informed by his butler that the master was in Portugal, she there located him. And, according to her, she advised him that Sheraton wanted to resume negotiations at 22 million net to Patino; and further, she called Boonisar in Boston, again Patino in Portugal, and Patino's friend, Cervantes, in Mexico City and Texas; then, again she called Boonisar in Boston to inform him that Cervantes in Mexico City would take his call to confirm a meeting with Patino; finally, she wrote two letters to Boonisar and two to Patino; she also had several phone conversations with Boonisar, and received one letter from Boonisar (rejecting any obligation), to which she made no written response. All of this activity took place in New York, with concurrent legal advice.

We have concluded that Special Term placed too narrow a construction on these actions which took place in New York. These are the only actions on which plaintiff constructs her suit. And we conclude as did the Court of Appeals in *Intercontinental Planning* v. *Daystrom* (24 N Y 2d 372, 384–385): " These contacts give New York a substantial interest in applying its own law in view of the policy underlying the applicable provision of our Statute of Frauds to protect principals in business transactions from unfounded claims and thereby encourage use of New York as a national and international business center. (Cf. Restatement 2d, Conflict of Laws [proposed Official Draft, Part II, 1968, § 188, Comment on subsection (2), pp. 206–210].) " Also, that " The general purpose underlying a Statute of Frauds can be characterized as the protection of parties who are sued for alleged promises informally made or to protect the enacting State's courts from perjury and prevent their use as instruments of extortion. "

Lastly, in our judgment, what plaintiff did was within the broad definition of " negotiating " and " assisting in the negotiation " of a real estate transaction, as proscribed by subdivision 10 of section 5–701 of the General Obligations Law. And similarly, her communication of a price and inducing Patino to reanimate the negotiations, leading to the sale of real estate, are within the license requirement of section 442–d of the Real Property Law. That she herself was one of the " cognoscenti " and knew such an arrangement should be in writing, is evidenced by her own desire that Sheraton, through Boonisar, memorialize their claimed understanding in writing. He did, but in doing so, he negated any recognition of an obligation to the plaintiff, thus protecting the defendant from the very claim now made.

Accordingly, we reverse the order so far as appealed from, on the law, and direct summary judgment in favor of Sheraton International, Inc. dismissing the complaint, with costs.

NUNEZ, J. (dissenting). In my view Special Term correctly denied summary judgment. I would affirm on Justice KORN's well-reasoned opinion. In effect the majority is applying New York law solely on the basis of several telephone calls made by plaintiff from New York during a fortuitous and brief sojourn here. New York lacks the requisite significant relationship, center of gravity or grouping of contracts. In fact New York has no significant relationship to the claimed transaction whatsoever and, therefore, New York law is not controlling.

MARKEWICH, LANE and STEUER, JJ., concur with McGIVERN, J. P.; NUNEZ, J., dissents in an opinion.

Order, Supreme Court, New York County, entered on August 10, 1972, so far as appealed from, reversed, on the law, defendant-appellant's motion granted, and the complaint dismissed as to it. Appellant shall recover of respondent $60 costs and disbursements of this appeal.