■ NPS ENGINEERS AND CONSTRUCTORS, INC., Respondent, v
UNDERWEISER & UNDERWEISER et al., Appellants and Third-
Party Plaintiffs-Appellants, et al., Third-Party Defendant.—
Order, Supreme Court, New York County (Louis Grossman,
J.), entered February 17, 1987, which granted plaintiff's mo-
tion for summary judgment and denied defendants' cross
motion for summary judgment, affirmed, without costs.

Plaintiff NPS Engineers and Constructors, Inc. (hereinafter
NPS) was formerly the tenant of office space located at 200
Park Avenue, New York City. NPS rented the space pursuant
to a written lease with the owner (hereinafter, the Overlease).
On September 10, 1982, plaintiff entered into a written sub-
lease for the premises with defendant Underweiser & Under-
weiser, a law firm. The sublease commenced October 1, 1982
and extended until September 22, 1983. Defendant Irwin P.
Underweiser, a principal in the defendant firm, personally
guaranteed the performance of all obligations of the firm

under the sublease. Irwin Underweiser's law practice involved the review of leases and subleases.

The sublease made no specific reference to escalation clauses contained in the Overlease. These clauses established the tenant's liability for increases in operating costs incurred by the landlord (hereinafter escalation clauses). However, the sublease did contain the following provisions:

"8. The Sublease is subject to the Over-Lease. It is also subject to any agreement to which the Over-Lease is subject. You, the Undertenant, state that you have read and initialed the Over-Lease and will not violate it in any way * * *

"11. The provisions of the Over-Lease are part of this Sublease. All the provisions of the Over-Lease applying to the Overtenant are binding on you, the Undertenant * * *

"14. This sublease can be changed only by an agreement in writing signed by the parties to the Sublease."

The owner billed NPS for escalation charges as authorized by the Overlease. Thereafter, NPS requested that defendant law firm pay: (1) $5,268, representing defendant's pro rata share of the escalation charges for 1982; and (2) $16,361, representing full payment of the escalation charges covering a period in 1983 during which defendants alone occupied the premises.

Defendant law firm argued that it was not responsible for the escalation charges since representations were made by an employee of the brokerage firm which negotiated the sublease that the firm would not be responsible for any escalation charges in the Overlease. Defendant Underweiser further contends that he was never shown a copy of the Overlease prior to the execution of the sublease. Both these assertions have been denied by Robin Fuchs, the brokerage firm employee and a third-party defendant. No dispute exists as to the accuracy of the calculated charges. A further contention by defendants is that a triable issue of fact exists with regard to the fraud defense.

The motion court granted plaintiff summary judgment on the grounds that the escalation clauses of the Overlease were clearly incorporated by reference into the sublease.

The sublease explicitly states that the Overlease will be incorporated as part of the agreement between the parties. Together these documents comprise an integrated writing, the meaning of which is unambiguous and complete. Paragraph 8 requires that the "Undertenant" read the Overlease and not violate its terms. Paragraph 11 of the sublease makes all

provisions of the Overlease applying to the "Overtenant" binding on the "Undertenant", which must include the escalation provisions. The alleged oral representations are inadmissible as it is well settled that where an agreement is complete upon its face and the alleged parol evidence contradicts the writing, such evidence may not be received (see, *Intercontinental Planning v Daystrom, Inc.,* 24 NY2d 372, 379 [1969]; *Iorio v Superior Sound,* 49 AD2d 1008 [4th Dept 1975]). The parol evidence rule also applies to lease agreements (*Pollack v Green Constr. Corp.,* 40 AD2d 996 [2d Dept 1972], *affd* 32 NY2d 720 [1973]). The alleged existence of a triable issue of fact based on fraud is negated by: (1) defendants' status as attorneys who represented themselves during the negotiations; (2) the absence of detailed pleadings in the fraud defense (see, CPLR 3016 [b]); and (3) the unlikelihood that defendants could establish the element of reasonable reliance on the alleged oral misrepresentations. Concur—Ross, Kassal, Rosenberger and Smith, JJ.

Sandler, J. P., dissents in a memorandum as follows: On February 13, 1978 the plaintiff NPS Engineers and Constructors, Inc. (NPS) entered into a lease with the landlord of 200 Park Avenue for certain office space. Article 28 of the lease agreement provides for additional rent to be paid by NPS to the landlord in the event the landlord's taxes or operating expenses in any lease year exceed those prevailing in the "base year" 1978.

On September 10, 1982 the defendant Underweiser & Underweiser, a law firm, entered into a sublease agreement with NPS commencing October 1, 1982 and extending for the remainder of the term of the Overlease less one day, i.e., until September 22, 1983. Paragraph 4 of the sublease entitled "Rent" provides as here pertinent: "The yearly rent is $67,360.00. You, the Undertenant, will pay this yearly rent to the Overtenant in twelve equal monthly payments of $5,613.33." Paragraph 11 of the standard form sublease provides that: "The provisions of the Over-Lease are part of this Sublease. All the provisions of the Over-Lease applying to the Overtenant are binding on you, the Undertenant, except these:". The words "except these" were crossed out, and typed below was a provision, not otherwise pertinent, prohibiting the subtenant from further subletting. There is not a single word in the sublease referring to additional rent.

In March 1983 the landlord billed NPS $21,000 for additional rent for the calendar year 1982. Six months later, after the sublease had expired, NPS demanded that the Underweis-

ers pay $5,268, representing their pro rata share based upon their occupancy during only a part of 1982. The Underweisers rejected the demand. In February 1984 the landlord billed NPS for additional rent of $16,361 for the period January 1, 1983 through September 22, 1983. NPS demanded that the Underweisers pay the full amount based on their occupancy throughout that period. When the Underweisers refused to pay, NPS commenced an action to recover these amounts based on the provisions of the lease and sublease.

Plaintiff and defendants cross-moved for summary judgment. The affidavits submitted on behalf of both parties were in sharp conflict as to whether or not it was agreed between those negotiating the sublease that the sublessee was assuming the obligation to pay additional rent. It is true that defendants acknowledged in their affidavits that they had proposed a provision in the sublease, or a letter to the landlord, confirming their understanding that defendants would not be required to pay additional rent—a circumstance that by itself would appear to provide some support for plaintiff's contention. However, defendants go on to depose that the plaintiff's broker refused the proposal to make this aspect of the agreement explicit, not because defendants were in fact obligated to pay additional rent, but rather because plaintiff preferred not to refer to additional rent in writing to the landlord—a reluctance that would be understandable in light of the fact that the plaintiff had never been charged additional rent during the lease period.

Defendants' affidavits go on to assert specifically that they decided not to pursue the matter of a specific provision because they were convinced that the sublease did not embrace an obligation to pay additional rent, and that the plaintiff's broker explicitly agreed with this interpretation. In short, unless the sublease provisions are found to constitute an unambiguous agreement by the defendants to pay additional rent, as the IAS court held in granting summary judgment to the plaintiff, it is clear that factual issues are presented that cannot be determined on these papers.

The question presented is whether a boilerplate provision in a form sublease which provides that "All the provisions of the Over-lease applying to the Overtenant are binding" on the sublessee, the critical word in the clause being "binding", is correctly construed as an unambiguous agreement by the sublessee to reimburse the sublessor for that part of the additional rent that the sublessor might pay the landlord,

represented by the period of time the premises were occupied by the sublessee.

Examining with care the 70 paragraphs and 22 rules and regulations comprising the lease, which are incorporated into the sublease, it is immediately apparent that they are almost entirely addressed to setting forth the reciprocal rights of the landlord and a tenant in occupancy. Thus, the lease addresses such matters as the right of a tenant to make alterations and installations, the tenant's obligation to take care of the premises and to make repairs, the tenant's obligation to comply with all applicable requirements of law, the respective liabilities of the landlord and tenant in connection with property loss, damage and reimbursement, their respective rights and obligations in the event of destruction by fire or otherwise, and so forth.

As to such matters, the word "binding" in the sublease is appropriate and easily understood. It clearly conveys that the subtenant upon entering into occupancy is required as a tenant in possession to conduct itself in accordance with the obligations that had been assumed originally by the sublessor. Whatever may have been the intent of whoever first drafted this form provision, or whatever may have been the circumstances under which it was drafted, the word "binding" is clearly a word singularly unsuited to conveying the very different concept that the sublessee is agreeing to reimburse the sublessor for that part of the additional rent paid the landlord by the sublessor that is represented by the period of occupancy by the sublessee.

The central economic significance of the potential obligation implicit in the agreement to pay additional rent to the bargain entered into by the parties makes it doubtful that such an agreement would be embraced in a catchall phrase employing language conspicuously unsuited to such an understanding. This is particularly true where the sublease specifically defines the rental obligation of the sublessee, and does so without any reference to additional rent, although the relationship between fixed rent and additional rent is plainly a close one, as evidenced by the fact that the main lease couples the two obligations in one clause. I do not believe it a reasonable conclusion that a sublessee, entering into a sublease that specifically defined his rental obligations and made no specific reference to his obligation to pay additional rent, would be on clear notice from the form language used that he was assuming the obligation to pay additional rent that could significantly add to his rental obligations.

I have tried to understand how it could have happened that the draftsmen of the form language used in this sublease would have used such obscure and doubtful language if it were intended that the sublease was to embrace the obligation of the sublessee to reimburse the sublessor for additional rent. Nothing in the record is helpful on that question, but it would seem to me a reasonable conjecture that the language with which we are concerned was first developed with regard to leases that did not contain additional rent provisions, and that form having become a familiar one, continued to be used with regard to leases embodying such a provision without any serious thought being given to the applicability, or suitability, of the form language to an additional rent clause in an Overlease. Whatever may have been the real understanding of the parties in this case, I think it is a serious error for this court to accept as unambiguous a provision which is in fact unclear and confusing, and which has an obvious potential to result in many cases in overreaching, and in fundamental misunderstandings between the parties.

Accordingly, the order of the Supreme Court, New York County (Louis Grossman, J.), entered February 17, 1987, which granted plaintiff-respondent's motion for summary judgment and denied defendants' cross motion for summary judgment in an action for reimbursement of additional rent paid the landlord by the plaintiff-respondent, should be modified, to deny the plaintiff-respondent's motion for summary judgment, and otherwise affirmed.