**WILLIAM J. CONLON & SONS, INC., Plaintiff,**

v.

**John WANAMAKER, Philadelphia, Defendant.**

**No. CV 83–1341.**

United States District Court, E.D. New York.

March 8, 1984.

Jeffrey S. Horn, Huntington, N.Y., for plaintiff.

Saul, Ewing, Remick & Saul, New York City, for defendant.

## MEMORANDUM & ORDER

PLATT, District Judge.

In this diversity action, defendant John Wanamaker, Philadelphia (Wanamaker) moves for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure on the ground that the alleged contract between the parties is rendered unenforceable by New York's Statute of Frauds. N.Y.Gen.Oblig. § 5–701(a)(1) (McKinney 1978). Plaintiff William J. Conlon & Sons, Inc. (Conlon) argues that Pennsylvania law, not New York law, should be applied and, therefore, the action is not barred by New York's Statute of Frauds. Plaintiff further argues that, even if New York law applies, the alleged contract does not fall within the Statute of Frauds.

This summary judgment motion, therefore, turns upon a choice of law analysis. This analysis is of particular importance because, if New York law applies, the alleged contract is rendered unenforceable while Pennsylvania's Statute of Frauds does not bar the action. Accordingly, only if New York law controls may summary judgment be granted. For the reasons stated below, we find that New York law applies and grant summary judgment to the defendant.

Plaintiff Conlon, a New York corporation, has its principal place of business in Huntington, New York, but conducts substantial business within the Commonwealth of Pennsylvania. Conlon is in the business of furniture repair and refinishing. Defendant Wanamaker is a corporation incorporated under the laws of the Commonwealth of Pennsylvania and has its princi-pal place of business in Philadelphia. Wanamaker is duly licensed to do business in New York and sells and delivers furniture to customers throughout the northeast.

Conlon's complaint is based on a breach of contract claim. It alleges that on or about October 6, 1981, Conlon submitted a written proposal to Wanamaker offering to perform furniture repair services at a specified rate for two years in portions of New York, New Jersey, Massachusetts and Philadelphia. Conlon maintains that Mr. William McDermott, then the Director of Customer Relations for Wanamaker, accepted the contract and agreed to give Conlon 90% of Wanamaker's service-related business. Conlon allegedly began service pursuant to the terms contained in the contract, performing 85% of its work in Pennsylvania, and continued work until Wanamaker ceased forwarding service calls to it. Plaintiff seeks damages for the work it did not receive under the alleged contract.

Wanamaker disputes the existence of a contract between the parties. It maintains that it did not accept the October 9, 1981 proposal. Regardless of the dispute as to whether the alleged contract was orally accepted, a signed agreement has not been produced and it has not been suggested that one has ever existed.

Defendant Wanamaker moves for summary judgment under New York's Statute of Frauds, arguing that there is no genuine issue as to the material fact that no writing sufficient to satisfy the Statute exists and, therefore, it is entitled to judgment as a matter of law. Plaintiff argues that Pennsylvania law applies and, because services are not within the Pennsylvania Statute of Frauds, that summary judgment may not be granted for Wanamaker. Accordingly, we must look to New York's choice of law rules to determine what law governs this action.

New York utilizes the "interest analysis" approach to choice of law problems. *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 300 N.Y. S.2d 817, 248 N.E.2d 576 (1969). Under this approach, the Court is to apply the law

of the jurisdiction with the most interest in the problem, thus allowing it "to apply the policy of the jurisdiction 'most intimately concerned with the outcome of [the] particular litigation.'" *Id.* at 382, 300 N.Y.S.2d at 825, 248 N.E.2d at 582 (citations omitted). A state has an "interest" in applying its law when application of its law to the case would advance the policy underlying the law. B. Currie, Selected Essays on the Conflict of Laws 584, 621 (1963).

The leading New York case concerning choice of law in statute of frauds cases is *Intercontinental Planning, Ltd. v. Daystrom, Inc., supra.* Because that case is similar to the one at hand, we will examine it in some detail. In *Daystrom*, plaintiff, a New York corporation engaged in the business of bringing together European and American firms desiring to enter into business relationships, sued defendant, a New Jersey corporation, for a finders' fee in connection with defendant's acquisition by a European firm. The plaintiff's suit was based on an oral modification allegedly made in New Jersey of an earlier written agreement. As in this case, under New York law, the alleged oral agreement would be void because New York's Statute of Frauds applies to claims for fees by finders and brokers. New Jersey law did not bar an action on such an agreement.

Rejecting traditional choice of law rules concerning contracts, the New York Court of Appeals declared that "'[t]he rule which has evolved clearly in our most recent decisions is that the law of the jurisdiction having the greatest interest in the litigation will be applied and that the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.'" 24 N.Y.2d at 382, 248 N.E.2d at 582, 300 N.Y.S.2d at 825 (quoting *Miller v. Miller*, 22 N.Y.2d 12, 15–16, 237 N.E.2d 877, 879, 290 N.Y.S.2d 734, 737 (1968)). In applying this approach to the case before it, the Court carefully illustrated how the interest analysis method should be used.

The Court examined the legislative history and found that the purpose of the New York Statute was to protect principals in the sale of a business from unfounded claims for finders fees. *Id.* 24 N.Y.2d at 384, 248 N.E.2d at 583, 300 N.Y.S.2d at 827. It noted New York's position as an "international clearing house and market place," *id.*, and reasoned that the policy underlying the statute would apply to protect both residents and nonresidents conducting business in New York. In contrast, the Court found that New Jersey lacked any interest in the application of its law. The Court reasoned that one of the main purposes of a Statute of Frauds—to protect courts from perjury and prevent their use as instruments of extortion—is only relevant when the suit is brought in the enacting states' courts and is inapplicable when the action is brought in another state. It further noted that, while the other purpose of the Statute—the protection of the State's defendants against unfounded claims—survives no matter where an action is brought, "New Jersey has no interest in having its lack of protection for its residents used to establish their liability in a suit brought by residents of other jurisdictions when the laws of the forum State offer a complete defense to the action." *Id.* at 385, 248 N.E.2d at 583–84, 300 N.Y. S.2d at 828. The Court concluded that, given the State's competing interests, no true conflict existed and to apply any law other than the law of the forum "would defeat a legitimate interest of the forum State without serving a legitimate interest of any other State." *Id.* Accordingly, the Court applied New York law and the Statute of Frauds was used to bar the plaintiff's cause of action.

Defendant Wanamaker contends that the analysis used in the *Daystrom* case is directly applicable to this case and dictates that New York law be applied. Wanamaker suggests that the purpose of the applicable section of the New York Statute of Frauds "is to prevent the perpetration of fraud by the assertion of claims not evidenced by a written agreement or by note or memorandum containing the essential terms of the contract between the parties." *DFI Communications, Inc. v. Greenberg,*

51 A.D.2d 403, 405, 381 N.Y.S.2d 880, 883 (1st Dept.1976), *modified on other grounds,* 41 N.Y.2d 602, 394 N.Y.S.2d 586, 363 N.E.2d 312 (1977). As in *Daystrom,* this policy applies to protect both residents and nonresidents conducting business in New York. Furthermore, Wanamaker argues that, as in *Daystrom,* Pennsylvania, as the State with the validating law, has no particular interest in protecting the New York courts from perjury, and no interest in having its lack of protection of its residents used to establish their liability in a suit brought by a New York resident in a New York court. Accordingly, defendant suggests that this Court is bound by the analysis adopted by the New York Court of Appeals in *Daystrom* to apply the laws of New York.

While the defendant's suggested application of the principles of the *Daystrom* case appears to be proper, one important consideration must be addressed. In arguing for the use of Pennsylvania law, plaintiff contends that, under the interest analysis method, Pennsylvania has the greatest interest because it has the most significant contacts with the dispute. Although the bald assertion that the weight of a State's interest is determined merely by the number of contacts is clearly wrong, the relationship between contacts and the proper application of the interest analysis must be examined.

Before entering into the interest analysis, the *Daystrom* court noted that while both New York and New Jersey had contacts with the dispute, there were significant contacts with the State of New York ("the services for which plaintiff claims compensation were substantially rendered in New York") and that these contacts gave New York a substantial interest in applying its own law and furthering the policies supporting it. 24 N.Y.2d at 384–85, 248 N.E.2d at 583, 300 N.Y.S.2d at 827. While it is clear that the *Daystrom* Court was concluding that there were sufficient contacts with New York so as to enable it to evaluate the State's interest under the interest analysis, it is also clear that, in the Court's estimation, New York had the most

significant contacts with the dispute. The problem that must be addressed, therefore, is the distinction and significance, if any, of "sufficient" versus "most significant" contacts in an interest analysis. This inquiry is important here because, unlike in *Daystrom* where New York clearly had the most significant contacts, the nature and quality of the contacts with New York and Pennsylvania is not clear.

Because plaintiff is a New York corporation and defendant a Pennsylvania corporation, much of the transaction of business between the parties took place over the telephone. The ready availability of long distance communications often makes it difficult to pinpoint where negotiations or agreements took place and to attribute such contacts to a particular forum. Therefore, many of the so-called "contacts" in this case cannot necessarily be tied to either State. However, the record does indicate that plaintiff frequently travelled to Philadelphia, Pennsylvania while negotiating the alleged contract with defendant and plaintiff alleges that eighty-five percent of all service calls rendered by the plaintiff for the defendant occurred within the Commonwealth of Pennsylvania while only five percent of the service calls occurred in New York.

New York clearly has contacts with the present dispute. However, this Court cannot conclude that New York has the "most significant" contacts. While it is true that in addressing New York Statute of Frauds choice of law problems many courts "looked first to the most significant contacts, and found them to be in New York, and then went on to talk about the greater interest that New York had in having its law applied," *Havenfield Corp. v. H & R Block, Inc.,* 509 F.2d 1263 (8th Cir.1975) (citing *Daystrom, supra; Pallavicini v. International Telephone & Telegraph Corp.,* 41 A.D.2d 66, 341 N.Y.S.2d 281 (1st Dept.1973); *Denny v. American Tobacco Co.,* 308 F.Supp. 219 (N.D.Cal.1970)), this observation does not mean that a State must have the "most significant" contacts in order to proceed with an interest analy-

**216**

sis. To ensure the validity of an interest in the outcome of a dispute, it is necessary that a State have some contacts with the dispute. However, to insist upon a State having the most significant contacts in order to have an interest would turn the interest analysis into the most significant contacts method of conflicts of law analysis, *see, e.g.,* Restatement 2d, Conflicts of Law § 188, a method rejected by the New York Court of Appeals in *Daystrom.*

■ This Court finds that New York has sufficient contacts with the instant dispute to give it a substantial interest in applying its policy. The plaintiff is a New York corporation, the defendant is authorized to do business and does do business in New York, the alleged contract was, at least in part, negotiated and discussed in New York, and the alleged contract included New York and services were actually rendered in New York. We agree with the defendant that the analysis formulated by the *Daystrom* court is applicable here and adopt the reasoning outlined above. Accordingly, we conclude that, under the proper application of the interest analysis, New York law should be applied to this dispute.

In pertinent part, New York's Statute of Frauds, General Obligations Law § 5–701, provides:

"Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

  1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime; ..."

N.Y.Gen.Oblig. § 5–701(a) (McKinney 1978).

This provision renders the alleged agreement unenforceable because, by its terms, it cannot be performed within one year and there is not a written agreement subscribed by the party to be charged. However, the plaintiff argues that the alleged agreement is taken out of the Statute of Frauds because it can be performed within one year since, under the terms of the agreement, each party had the unilateral option to terminate the agreement if gasoline prices rose above $1.50 per gallon. The alleged termination provision provides that "[t]he prices quoted below are firm ... providing gasoline does not rise above $1.50 per gallon during the negotiated period. Renegotiation will occur, during the covered period, *only* when gasoline prices rise above the stipulated price and will not be based on labor or material increases." (Emphasis in original).

■ For statute of fraud purposes, a contract with a termination provision can be performed within one year if there is a possibility, however slight, that the termination can be unilaterally effected within one year. *Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.,* 614 F.2d 832, 837 (2d Cir.1980) (citing *North Shore Bottling Co. v. C. Schmidt & Sons,* 22 N.Y.2d 171, 292 N.Y.S.2d 86, 239 N.E.2d 189 (1968)). However, to excuse a contract from the writing requirement, the termination provision must be express. *Id.* (citing *Hausen v. Academy Printing & Specialty Co.,* 34 A.D.2d 792, 311 N.Y.S.2d 613 (2d Dept.1970)). The provision that the plaintiff points to here is not an express unilateral termination provision. The language of the provision merely provides that prices will be renegotiated if gas reaches a certain level and this does not constitute an express unilateral termination provision. The termination provision is, at best, implied, and an implied provision is insufficient to remove a contract from the requirements of the Statute of Frauds. *Id.* Because plaintiff is unable to provide a written agreement subscribed by the party to be charged, its cause of action is barred by the Statute of Frauds.

For the reasons stated above, this Court concludes that New York law applies to the dispute and, therefore, the Statute of Frauds is a bar to the plaintiff's claim.

Accordingly, summary judgment is hereby granted to the defendant.

SO ORDERED.