Erica P. JOHN, Plaintiff,

v.

SOTHEBY'S, INC., a foreign
corporation, Defendant,

v.

Julian NAVA, Intervenor.

No. 90 Civ. 5867 (DNE).

United States District Court,
S.D. New York.

Aug. 1, 1994.

Halling & Cayo, S.C., Milwaukee, WI (David B. Halling, of counsel), for plaintiff.

Fishkin & Pugach, Garden City, NY (Brian Fishkin, of counsel), for intervenor.

## OPINION & ORDER

EDELSTEIN, District Judge:

This action arises out of a February 27, 1989 agreement between Erica P. John ("John" or "plaintiff") and Sotheby's, Inc.

("Sotheby's") under which John contracted with Sotheby's to sell by auction a painting attributed to Rembrandt Harmensz Van Rijn, entitled "Christus" ("the Painting"). When John contracted with Sotheby's to sell the Painting, John represented that she owned it. Prior to the auction at which Sotheby's intended to sell the Painting, however, Dr. Julian Nava ("Nava" or "intervenor") came forward and claimed ownership of the Painting. Presented with these competing ownership claims, Sotheby's withdrew the Painting from auction, refused to return the Painting to John, and this action commenced. On February 10, 1992, this Court granted Nava's motion to intervene in this action. *See John v. Sotheby's,* 141 F.R.D. 29, 37 (S.D.N.Y.1992). At a pretrial conference held on February 3, 1994, both John and Nava individually entered into stipulations on the record to settle their claims against Sotheby's; concurrently, Sotheby's entered into stipulations on the record to settle its claims against both John and Nava. *See John v. Sotheby's,* 90 Civ. 5867 (DNE) (Feb. 3, 1994 Hearing Transcript). I approved these stipulations. Accordingly, no claims involving Sotheby's remain to be decided by this Court.

The prior pleadings in this action have been amended by the parties to eliminate several claims. (Plaintiff's Proposed Pretrial Order ("PPTO"), at ¶ 1; Intervenor's Proposed Pretrial Order ("IPTO"), at ¶ 1). Plaintiff's sole claim for relief is as follows: John claims "ownership of the [P]ainting equally with the Estate of her late ex-husband, Harry John." (PPTO, at ¶ 4A.). Intervenor's sole claim for relief is as follows: "Nava claims full title to the [P]ainting." (IPTO, at ¶ 4B).

This Court tried this action without a jury in April 1994. Plaintiff and intervenor each called a single witness to testify at trial. In addition, intervenor read into the record portions of the deposition testimony of a witness who was not available to testify at trial, plaintiff's late ex-husband. Finally, the parties offered documentary evidence. Pursuant to Federal Rule of Civil Procedure 52, this Opinion shall constitute the Court's written findings of fact and conclusions of law.

## FINDINGS OF FACT

Plaintiff called a single witness to testify at trial, Erica P. John. Although John obviously has an interest in the outcome of this suit, I found her to be a credible witness. Intervenor also called a single witness, Thomas J. Jeffers. I did not find Mr. Jeffers to be a credible witness. Mr. Jeffers' demeanor on the witness stand, as well as his evident bias, undermined his credibility and drew into question the veracity of his testimony.

Plaintiff currently resides in the State of Wisconsin. (Trial Transcript ("Tr."), at 14). Plaintiff and Harry John ("H. John") were married on September 22, 1956, and lived in Wisconsin during their marriage. (Tr., at 14). Shortly before plaintiff and H. John were married, H. John founded a company called Sacred Pictures Company ("Sacred"), which reproduced religious paintings and sold calendars incorporating those reproductions. (Tr., at 16, 68). H. John also founded and was president of a private charitable foundation, DeRance Inc. (Tr., at 17). During the course of her marriage to H. John, plaintiff worked with H. John at Sacred (Tr., at 16–17, 71–72), and served as a director of DeRance Inc. (Tr., at 18). Both of these companies were located in Wisconsin. (Tr., at 16–17, 23).

During their marriage, plaintiff and H. John purchased several works of art. (Tr., at 19). The Painting was purchased by plaintiff and H. John in New York in 1960 after they viewed it at an exhibition held in Wisconsin. (Tr., at 19–20, 22; Plaintiff's Trial Exhibit ("PExh.") 7, 8). The Painting was the marital property of plaintiff and H. John and, as such, was jointly owned by them during their marriage. (Tr., at 19–24; PExh. 2, 3).

On November 4, 1985, plaintiff and H. John were divorced in the State of Nevada. (Tr., at 14, 23). Upon the conclusion of the divorce proceeding in Nevada, an action was commenced in Wisconsin for the division of plaintiff's and H. John's marital property. (Tr., 23; PExh. 2, 3).

In or around February 1985, plaintiff and H. John entered into a stipulation which, among other things, restrained H. John from "disposing of" the Painting. (PExh. 3, at 2).

It is undisputed that both plaintiff and H. John signed this stipulation, that each was represented by counsel at the time this stipulation was signed, and that plaintiff's and H. John's attorneys also signed the stipulation. (PExh. 3, at 4). After this stipulation was executed, it was submitted to the State of Wisconsin Circuit Court, Milwaukee County Family Division ("Family Court"). On February 14, 1985, the Family Court entered an order which, *inter alia*, enjoined H. John from disposing of the Painting. (PExh. 3, at 5–6). This order also enjoined H. John from "disposing of or encumbering any assets without stipulation of the parties, or consent of the court." (PExh. 3, at 6).

In or around June 1985, H. John entered into a contract that purports to convey to intervenor any interest H. John had in the Painting. That contract, dated June 21, 1985 ("the June 21 Agreement"), is signed by H. John and reads:

> I, HARRY G. JOHN, In consideration of $10.00 and other valuable consideration, hereby bargain, sell, and assign all of my right, title and interest in and to the Rembrant [sic] Painting, known as the "Christus" to DR. JULIAN NAVA, Ph.D., which is presently in possession of the Milwaukee Museum of Art, and I hereby authorize and direct the Museum to turn over possession of said painting to DR. JULIAN NAVA, Ph.D.

(IExh. A). H. John testified by deposition that he sold the Painting to Nava and that the agreement, dated June 21, 1985, memorializes that transaction. (Tr., at 71).

On January 4, 1989, plaintiff and H. John signed a Final Marital Settlement Agreement ("Settlement Agreement"). (PExh. 2). The Settlement Agreement was approved by the Family Court on February 8, 1989, and judgment was entered by the Family Court on that date. (PExh. 2).

As relevant to this action, the Settlement Agreement provides:

> VII. *Paintings.* The parties acknowledge that they have ownership of a painting by the artist Salvador Dali entitled "Jesus Christ" and another painting entitled "Christus" attributed to the artist

Rembrandt Van Rijn. These paintings shall be placed for auction sale at Sotheby's New York City, New York at the next regularly scheduled action in May, 1989.... After costs of sale and reimbursement to art dealer ... net proceeds from the sale of the paintings shall be divided equally between the parties.

(PExh. 2, at 4–5).

Pursuant to the terms of the Settlement Agreement, the Painting was consigned to Sotheby's on February 27, 1989. (PExh. 1). As already discussed, the Painting was withdrawn from auction when Nava presented to Sotheby's a claim of ownership in the Painting. H. John died on December 19, 1992. (Tr., at 14).

### CONCLUSIONS OF LAW

#### A. Evidentiary Issues

##### 1. Admissibility of Trial Exhibits

During the trial of this action, this Court reserved decision on the admissibility of four proposed trial exhibits. Specifically, the Court reserved decision on the admissibility of PExh. 6(id.) [1]; Intervenor's Trial Exhibit ("IExh.") B(id.); IExh. C(id.); IExh. E(id.).

▮ PExh. 6(id.) is a two-page summary captioned "FEES AND EXPENSES ASSOCIATED WITH SALE OF REMBRANDT," to which is attached approximately seventy-two pages of what appear to be invoices from plaintiff's attorneys. This collection of documents was offered by plaintiff to show plaintiff's "attorney's fees which she has gone to in an effort to obtain possession of the [P]ainting." (Tr., at 33). Intervenor objects to the admission of this exhibit on grounds of relevance.

Intervenor's objection to the admission of PExh. 6(id.) is sustained. First, PExh. 6(id.) is not relevant to the issues on trial. *See* Fed.R.Evid. 401, 402. Plaintiff's pleadings, as amended by plaintiff's pretrial order, do not contain a claim sounding in equity for recovery of attorney's fees. Second, although the parties stipulated that this exhibit was "authentic" (Tr., at 13), plaintiff failed to offer evidence that the fees listed in this

---

1. Where an exhibit letter or number is followed by "(id.)" the exhibit has not been received into evidence and was marked for identification purposes only.

exhibit were reasonable or necessary to the prosecution of this action. Thus, aside from its lack of relevance, a proper foundation was not laid for the admission of this exhibit.

■ IExh. B(id.) is a four-page document composed of: (1) a legible photocopy of a cable remittance order purporting to convey $20,000 from Patricia K. Nava and Nava to D.W. O'Connell; (2) a photocopy of a check in the amount of $7,500, which is barely legible but appears to be payable to H. John; (3) a partially legible photocopy of a money transfer order in the amount of $55,000, payable to D.W. O'Connell (purchaser's signature illegible); and (4) a photocopy of two cashier's checks, payable to Patricia K. Nava, each in the amount of $10,000. Plaintiff objects to the admission of this exhibit on grounds of relevance. (Tr., at 95). Plaintiff's objection is overruled and this exhibit is received into evidence.

■ IExh. C(id.) is the California Superior Court judgment ("the California Judgment") discussed in a Memorandum & Order filed by this Court on March 11, 1994. *John v. Sotheby's,* 1994 WL 88614, 1994 U.S.Dist. LEXIS 2866 (S.D.N.Y. Mar. 11, 1994). The California Judgment was entered by the California Superior Court upon the stipulation of H. John and Nava, which they entered into to resolve an action between H. John and Nava. The parties to the instant action have stipulated on the record that the photocopy of this judgment, marked as IExh. C(id.), is an accurate reproduction of the original judgment. (Tr., at 13, 130). Intervenor offers this exhibit to show a prior adjudication of the ownership of the Painting, and argues that this Court is bound by the California Judgment.

For the reasons discussed in this Court's March 11, 1994 Memorandum & Order, *see John v. Sotheby's,* 1994 WL 88614, 1994 U.S.Dist. LEXIS 2866 (S.D.N.Y. Mar. 11, 1994), the California Judgment is not entitled to full faith and credit in this Court. Simply stated, John was not a party to that action, and the rendering court lacked personal jurisdiction over John at the time the California Judgment was entered. The California Judgment thus does not impact John's claim to ownership of the Painting. Accordingly, this exhibit is not relevant to the issues on trial. Plaintiff's objection is sustained.

I also note that the stipulation that the California Judgment memorializes is intrinsically limited. First, John was not a party to the action that it resolved and the California Judgment does not purport to adjudicate the issues raised by John in the instant case. Second, another stipulation, signed by H. John and John, and also entered as a court order, directly contradicts the stipulation memorialized in the California Judgment. (PExh. 2, at 4–5). Hence, even assuming, *arguendo,* that this Court found the California Judgment to be relevant, it would not alter this Court's decision on the merits.

IExh. E(id.) is a Sotheby's "remittance advice" that lists the sale price of the Dali painting mentioned in PExh. 2 and IExh. D. Plaintiff objects to the admission of this exhibit on relevancy grounds. (Tr., at 48–50). After this Court had reserved decision on the admissibility of this exhibit, intervenor made an offer of proof seeking the admission of this document and attempting to show that John received $260,000 from the sale of this Painting. (Tr., at 132). In response, plaintiff stipulated on the record that John had received $260,000 from the sale of the Dali painting, thus obviating the need for intervenor's offer of proof. (Tr., at 133). IExh. E(id.) arguably is relevant to an equity argument raised by intervenor, which is more fully discussed below. Plaintiff's objection to the admission of IExh. E(id.) is overruled, and the exhibit is admitted into evidence.

*2. Plaintiff's Motion to Reopen the Record*

During the course of the trial of this matter, plaintiff decided not to introduce into evidence certain documents and deposition testimony that had been identified in plaintiff's pretrial order. At the conclusion of plaintiff's case in chief, the following colloquy occurred between plaintiff's counsel and the Court:

MR. HALLING: So I am prepared to have the defendant [sic] go forward when we return.

THE COURT: Do you rest now?

MR. HALLING: I will rest right now.

THE COURT: You have nothing further of this witness? You have nothing further in this case? *No depositions at all?*

MR. HALLING: *I would, to the extent that I use depositions and I do have them, they would be used, I believe, in response to the defendant's [sic] case by way of impeachment or the like, but I have nothing more by way of substantive evidence in my case in chief.*

THE COURT: My law clerk says two of your exhibits were not moved into evidence.

MR. HALLING: Thank you. I was just going to say if I haven't moved into evidence all of my exhibits, I would do so now. I thought I had moved all of them. Which ones are missing?

THE CLERK: Numbers 4 and 5.

MR. HALLING: Yes. That wasn't by error, your Honor. I have marked in my pretrial submissions Exhibits 4 and 5, which I have not offered thus far, and I don't plan to put them in evidence unless it's necessary in response to the defendant's [sic] case.

(Tr., at 59–60) (emphasis added). The Court then adjourned for a luncheon recess. Upon the commencement of the afternoon session, the Court again questioned plaintiff's attorney as to whether plaintiff had completed her case in chief:

THE COURT: I am ready. Let's proceed. Do you rest?

MR. HALLING: I believe I have rested on the record, your Honor.

(Tr., at 61).

On May 4, 1994, two weeks after the conclusion of the trial, plaintiff filed a motion seeking to reopen the trial record to permit plaintiff to offer into evidence several pages of a deposition of Nava that was taken on November 6, 1992. Plaintiff argues that reopening the record to include this additional evidence would serve the interests of justice. *Plaintiff's Memorandum of Points and Authorities in Support of Her Motion to Reopen and Supplement the Record,* at 4. Intervenor opposes plaintiff's motion to reopen the record. Intervenor argues that reopening the record at this time would be prejudicial because plaintiff's deliberate choice not to move the admission of this evidence affected intervenor's trial strategy.

An application seeking to reopen the record is committed to the sound discretion of the district court. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 331–32, 91 S.Ct. 795, 802–03, 28 L.Ed.2d 77, *reh'g denied,* 401 U.S. 1015, 91 S.Ct. 1247, 28 L.Ed.2d 552 (1971); *Air et Chaleur, S.A. v. Janeway,* 757 F.2d 489, 495 (2d Cir.1985); *B.V. Bureau Wijsmuller v. U.S.,* 702 F.2d 333, 342 (2d Cir.1983); *Schoenholtz v. Doniger,* 112 F.R.D. 110, 112–13 (S.D.N.Y.1986); *Bradford Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 622 F.Supp. 208, 213 (S.D.N.Y.1985), *aff'd,* 805 F.2d 49 (2d Cir. 1986). In evaluating a party's motion to reopen the record after the conclusion of a trial, the court must consider (1) whether or not the moving party's failure to submit evidence was the result of its own lack of diligence; (2) the extent to which reopening the record might prejudice the nonmovant; and (3) where the interests of justice lie. *See Bradford Trust Co.,* 622 F.Supp. at 213; *Reconstruction Fin. Corp. v. Commercial Union of Am. Corp.,* 123 F.Supp. 748, 750 (S.D.N.Y.1954). The movant has the burden of demonstrating that the moving party's failure to submit evidence was not the result of its own lack of diligence, reopening the record would not unduly prejudice the nonmovant, and reopening the record would further the interests of justice. *Id.*

In the instant case, it is clear from the record that plaintiff made a deliberate strategic choice not to move the admission of the Nava deposition. At the close of plaintiff's case in chief, this Court closely questioned plaintiff's attorney as to whether plaintiff intended to move the admission of this and certain other evidence. (Tr., at 59). Plaintiff's attorney stated that although he had identified deposition testimony in his pretrial order, plaintiff would not move its admission into evidence in support of plaintiff's case in chief. (Tr., at 59–60). Thus, there is no doubt that plaintiff's decision during the trial not to seek admission of this evidence was both knowing and deliberate. At the very least, plaintiff has failed to show that the failure to produce this evidence was not the result of plaintiff's lack of diligence. *See Bradford Trust Co.,* 622 F.Supp. at 213.

Moreover, plaintiff has failed to demonstrate that intervenor would not be prejudiced by admission of this evidence at this time. The parties to this action were well aware of the existence and content of the Nava deposition at the time this action was tried. Plaintiff's decision not to offer this testimony in support of an alternative theory of recovery appears reasonably likely to have influenced Nava's trial strategy.

Finally, plaintiff has failed to demonstrate that the interests of justice would be served by reopening the record. Examined in the best light, the Nava deposition might lend some support to one theory of recovery propounded by plaintiff. This marginal utility is far outweighed by the potential prejudice to intervenor that admitting this evidence might entail, as well as the fact that plaintiff failed to demonstrate that the failure to produce this evidence was not the result of plaintiff's lack of diligence. Thus, I find that the interests of justice would not be served by reopening the record.

Accordingly, plaintiff's motion to reopen the record is denied.

### B. Choice of Law

■ The instant case is before this Court pursuant to this Court's diversity jurisdiction. At the core of this case is a dispute over the meaning of a contract, the June 21 Agreement. Although the parties failed to discuss choice of law in their respective briefs, this Court must determine which jurisdiction's law to apply in interpreting the June 21 Agreement.

In cases in which jurisdiction depends on diversity of citizenship, a federal court must follow the conflict of laws rules prevailing in the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Cargill, Inc. v. Charles Kowsky Resources, Inc.,* 949 F.2d 51, 55 (2d Cir.1991). New York utilizes an interest analysis approach to choice of law prob-

lems. *See Cargill,* 949 F.2d at 55; *William J. Conlon & Sons, Inc. v. Wanamaker,* 583 F.Supp. 212, 213 (E.D.N.Y.1984). Under New York conflicts principles, "the law of the jurisdiction having the greatest interest in the litigation will be applied and ... the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Intercontinental Planning, Ltd. v. Daystrom, Inc.,* 24 N.Y.2d 372, 300 N.Y.S.2d 817, 824, 248 N.E.2d 576, 582 (1969) (citations omitted); *see J. Zeevi and Sons, Ltd. v. Grindlays Bank (Uganda) Ltd.,* 37 N.Y.2d 220, 371 N.Y.S.2d 892, 898, 333 N.E.2d 168, 172–73 (1975); *Auten v. Auten,* 308 N.Y. 155, 161, 124 N.E.2d 99 (1954); *see also William J. Conlon & Sons,* 583 F.Supp. at 213. The Court must evaluate the nexus between each jurisdiction and the controversy in light of the policies and purposes to be vindicated by the conflicting laws. *See id.* The Court will apply the laws of the jurisdiction that has the greatest interest in, and is most intimately concerned with, the outcome of a given litigation. *See J. Zeevi and Sons,* 371 N.Y.S.2d at 898, 333 N.E.2d at 172–73. Thus, under New York conflicts principles, controlling effect is accorded to the law of the jurisdiction " 'which has the greatest concern with, or interest in, the specific issue raised in the litigation.' " *Intercontinental Monetary Corp. v. Performance Guarantees, Inc.,* 705 F.Supp. 144, 147 (S.D.N.Y.1989) (quoting *Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 69, 286 N.E.2d 454, 457 (1972)).

■ It is clear from the record that Wisconsin[2] has the greatest nexus to, and interest in, the contract dispute at the heart of this case. Two orders issued by a court in Wisconsin have a direct bearing on the interpretation of the June 21 Agreement. Plaintiff is, and H. John was, a resident of Wisconsin. During their marriage, plaintiff and H. John resided in Wisconsin. Following plaintiff's and H. John's divorce, the division of marital property—including the Painting—

**2.** Although intervenor is a resident of California, the Painting currently is located in New York, and H. John and plaintiff were divorced in Nevada, these jurisdictions do not have the greatest interest in, nor are they most intimately concerned with, the outcome of a this litigation. *See*

*J. Zeevi and Sons,* 371 N.Y.S.2d at 898, 333 N.E.2d at 172–73. The State of Wisconsin clearly has a greater nexus to this controversy than does either New York, Nevada, or California, in light of the policies and purposes to be vindicated by relevant laws.

occurred in Wisconsin. At the time the June 21 Agreement was entered into, plaintiff and H. John resided in Wisconsin. Finally, this Court's ultimate decision will impact the property rights of plaintiff, a Wisconsin resident, and the estate of the late H. John, which it appears from the record is administered in Wisconsin.

Thus, Wisconsin has the greatest interest in, and is most intimately concerned with, the outcome of this litigation. Accordingly, this Court will apply Wisconsin law in interpreting the June 21 Agreement.

### C. The June 21 Agreement

■ It is hornbook law that when the terms of an agreement are clear and unambiguous, the court will not look beyond the "four corners" of the document in assessing the meaning of that contract. *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 581 F.Supp. 241, 243 (S.D.N.Y.1984). It is well settled in Wisconsin that "a basic rule of contract[ ] interpretation [is] that 'the language of a contract must be understood to mean what it clearly expresses, and the courts may not depart from the plain meaning of a contract when [the contract] is free from ambiguities.'" *In re Watertown Tractor & Equip. Co.*, 94 Wis.2d 622, 637, 289 N.W.2d 288 (1980) (quoting *In Matter of Estate of Alexander*, 75 Wis.2d 168, 181–82, 248 N.W.2d 475 (1977)). If the intent of the parties to a contract "can be determined with reasonable certainty from the face of the contract itself, there is no need to resort to extrinsic evidence." *Id.* 94 Wis.2d at 638, 289 N.W.2d 288 (quoting *Patti v. Western Mach. Co.*, 72 Wis.2d 348, 351, 241 N.W.2d 158 (1976)).

■ In the instant case, the language of the June 21 Agreement is clear and unambiguous. The June 21 Agreement states that "I, HARRY G. JOHN ... hereby bargain, sell, and assign *all of my right, title and interest* in and to the Rembrant [sic] Painting, known as the "Christus" to DR. JULIAN NAVA, Ph.D." (IExh. A) (emphasis added). By this agreement, H. John agreed to "bargain, sell, and assign" *his* ownership interest in the Painting. The June 21 Agreement does not provide for the unequivocal transfer of free and clear ownership of the Painting to Nava;

rather, in the nature of a quit claim deed it transferred H. John's interest—and only that interest—to Nava.

■ The question thus becomes what H. John's interest in the Painting was at the time the June 21 Agreement was executed. As the Settlement Agreement makes clear, both plaintiff and H. John considered the Painting to be marital property held jointly by both. In the Settlement Agreement, signed by plaintiff, H. John, and their respective attorneys, "The *parties* acknowledge that *they* have ownership of a painting ... entitled 'Christus.'" (PExh. 2, at 4). At the time that the June 21 Agreement was executed, H. John also was aware that he did not possess free and clear ownership of the Painting because, in February 1985, H. John had stipulated to a voluntary restraining order, which was entered as an order of the Family Court, that prohibited him from selling the Painting. (PExh. 3, at 2). This voluntary restraining order preserved the status quo concerning H. John's and plaintiff's marital property during the pendency of the action to distribute that property.

Under the terms of the Settlement Agreement, H. John retained sole possession of works of art that were his separate property, and retained a one-half interest in the proceeds from the sale of the Painting. (PExh. 2, at 4–6). The fact that the Settlement Agreement treats the Painting as marital property jointly owned by plaintiff and H. John supports a finding that H. John at all relevant times possessed the ability to transfer no more than a 50% interest in the Painting. This conclusion is bolstered by Wisconsin domestic relations law, which provides that, absent unusual circumstances (not alleged in the instant case or in the Family Court action), all marital property is divided equally between spouses upon divorce. *See* Wis.Stat. § 767.255 (1993); *In re Marriage of Krebs*, 148 Wis.2d 51, 54, 435 N.W.2d 240 (1989).

Thus, I find that, at the time the June 21 Agreement was executed, H. John owned a one-half interest in the Painting.

Plaintiff has failed to prove that the June 21 Agreement failed for want of consider-

ation or was otherwise not a valid contract. Accordingly, the June 21 Agreement transferred H. John's interest in the Painting to Nava. Because H. John owned a one-half interest in the Painting, H. John's one-half interest was sold to Nava, and Nava is entitled to a one-half interest in the Painting. Plaintiff is entitled the remaining one-half interest in the Painting.

*D.   The Parties' Arguments in Support of an Increased Share in the Proceeds from the Sale of the Painting*

At trial, both plaintiff and intervenor raised arguments in an attempt to demonstrate that each should be entitled to more than a 50% share in the proceeds from the sale of the Painting. Some of these arguments are grounded in equity; some were not properly pleaded in plaintiff's or intervenor's proposed pretrial orders, which amended the prior pleadings in this action. (PPTO ¶ 1; IPTO ¶ 1). Nonetheless, in the interest of completeness, this Court will briefly address these arguments.

■■■ Plaintiff argued that this Court should grant plaintiff 100% ownership of the Painting in order to compensate her for her attorney's fees and other expenses incurred in pursuing this and related actions. This contention is devoid of merit. In the American system, absent a fee shifting statute or some other authority, each party must bear its own litigation costs. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y.*, 421 U.S. 240, 247–57, 95 S.Ct. 1612, 1616–21, 44 L.Ed.2d 141 (1975); *see also* Alan Hirsch and Diane Sheehey, *Awarding Attorney's Fees and Managing Fee Litigation* 1–2 (1994). Plaintiff has failed to offer any legal support for her request for reimbursement of attorney's fees. Thus, the Court declines to increase plaintiff's interest in the Painting to compensate her for her litigation expenses.

■■■ Intervenor also argues that he should be awarded a 100% interest in the Painting. First, intervenor argues that an order filed by the Family Court on February 14, 1990 (IExh. D), which amended the Family Court's earlier judgment distributing plaintiff's and H. John's marital property, deprives plaintiff of her interest in the Paint-

ing. It is Nava's view that the February 14, 1990 Family Court order revised the Family Court's prior orders such that (1) John was no longer entitled to any interest in the proceeds from the sale of the Painting, and (2) John was awarded a 100% interest in a Dali painting in lieu of her interest in the Painting. Second, intervenor argues that plaintiff would be unjustly enriched if she were to receive a one-half interest in the Painting because she received approximately $260,000 (Tr., at 133; IExh. E) from the sale of a Dali painting. Plaintiff was awarded a 100% interest in the Dali painting as a result of the February 14, 1990 Family Court order. (IExh. D).

Nava's first argument is wholly without merit. Intervenor's interpretation of the February 14, 1990 Family Court order is refuted by the terms of the order itself. In its February 14, 1990 order, the Family Court found that H. John had violated the Family Court's previous orders, and sanctioned him. The order contains the following decretal paragraphs:

> IT IS HEREBY ORDERED that all proceeds to be realized from the sale of the Salvador Dali painting be, and the same hereby are awarded to Petitioner, Erica P. John and she shall provide an accounting to [H. John] and/or his counsel of said revenues.

> IT IS FURTHER ORDERED that *the Judgment in all other respects shall remain in full force and effect.*

(IExh. D) (emphasis added).

As is clear from the text of the February 14, 1990 Family Court order, the Family Court made only one modification to the its earlier judgement: Plaintiff was granted an additional award to punish H. John for his contemptuous conduct. The specific language of this order makes clear that the prior judgments of the Family Court otherwise remained unamended. Specifically, the February 14, 1990 order provides that the earlier judgment "in all other respects shall remain in full force and effect," including, but not limited to, those portions of the earlier judgment pertaining to John's interest in the Painting. (IExh. D).

Thus, the February 14, 1990 Family Court order does not deprive plaintiff of her interest in the Painting or support Nava's claim to a 100% interest in the Painting.

 With regard to intervenor's second argument, I find that plaintiff will not be unjustly enriched by retaining her one-half interest in the Painting. This Court accepts intervenor's contention that John received $260,000 from the sale of the Dali—some $130,000 more than she would have under the terms of the original Family Court judgment. The Family Court, however, found that this result was appropriate under Wisconsin law and on the record before it. Intervenor has failed to prove that this result is inequitable or at odds with relevant law, and has failed to offer authority in support of his argument that this Court should reach a different result than did the Family Court.

Moreover, intervenor claims no interest in the Dali painting and cannot complain that he was harmed by plaintiff's gain. Nava has failed either to allege or to prove the elements of his unjust enrichment claim. *See Ramsey v. Ellis,* 168 Wis.2d 779, 784–85, 484 N.W.2d 331 (1992) ("The elements of a claim based on unjust enrichment are: (1) plaintiff conferred a benefit on defendant, (2) defendant knew of the benefit, and (3) it is inequitable for defendant to accept or retain the benefit without paying its value."); *D.A. Collins Constr. Co. v. ICOS/NCCA,* 1994 WL 328626, *slip op.,* at *21, 1994 U.S.Dist. LEXIS 9001, *slip op.,* at *28 (N.D.N.Y. June 28, 1994) (quoting *Barr Labs., Inc. v. Quantum Pharmics, Inc.,* 827 F.Supp. 111, 119 (E.D.N.Y.1993)) (" 'an unjust enrichment claim will only lie if the plaintiff can show that (1) defendant was enriched; (2) the enrichment was at plaintiff's expense; (3) the circumstances were such that equity and good conscience require defendant to make restitution.' "). Among other things, intervenor has failed to prove that plaintiff was enriched at Nava's expense or that equity requires that plaintiff disgorge certain monies in favor of Nava. Accordingly, I find intervenor's unjust enrichment argument to be without merit.

## CONCLUSION

For the reasons discussed above, I find that plaintiff, Erica P. John, is entitled to a one-half interest in the net proceeds from the sale of the Painting and that intervenor, Julian Nava, is also entitled to a one-half interest in the net proceeds from the sale of the Painting. The parties are ordered to prepare and to submit to this Court by August 15, 1994 a proposed judgment that is consistent with this Opinion & Order. In settling the proposed judgment, the parties may agree to (1) sell the Painting by auction and split the net proceeds; (2) arrange for a private sale of the Painting and split the net proceeds; or (3) another alternative method of effectuating an equal distribution of the fair market value of the Painting. If the parties cannot reach such an agreement, I direct that the proposed judgment provide that the Painting be auctioned and the net proceeds, after costs and expenses, split equally between plaintiff and intervenor.

SO ORDERED.