**Gabriella GIACOMELLO, Plaintiff,**

v.

**J.C. PENNEY CO., INC., Defendant.**

**No. 99Civ.11939(KNF).**

United States District Court, S.D. New York.

May 3, 2001.

Timothy L. Collins, Collins, Dobkin & Miller, L.L.P., New York City, for plaintiff.

Steven F. Goldstein, Feder, Goldstein, Tanenbaum, D'Errico & Arnedos, LLP, Carle Place, NY, for defendants.

## MEMORANDUM AND ORDER

FOX, United States Magistrate Judge.

### I. INTRODUCTION

In this tort action, brought pursuant to the court's diversity jurisdiction, a controversy has developed concerning which state's law should govern the disposition of this lawsuit. Plaintiff urges that New York law should govern; defendant main-

tains that Pennsylvania law should be applied. To resolve this dispute, the Court directed the parties to submit separate writings to the Court in support of their respective positions. The parties' submissions were received and have been considered by the Court. Their dispute is addressed below.

## II. BACKGROUND

The plaintiff, Gabriella Giacomello ("Giacomello") had a long-standing history of epilepsy, for which she received treatment from Dr. Hugh Melnick. Dr. Melnick's office is located in New York City. Giacomello received health insurance coverage from Empire BlueCross/BlueShield of New York State ("Empire"). A prescription drug program was among the services provided to plaintiff by Empire. Giacomello would receive periodic notices from Empire identifying the pharmacies participating in her health insurance prescription drug program; and she was required to use those designated pharmacies in order to avail herself of the benefits of that program.

Empire entered into a contractual agreement with Express Pharmacy of Pittsburgh, Pennsylvania ("Express"), through which Express agreed to dispense drugs to Empire's members located in New York State. On April 30, 1997, a nurse in Dr. Melnick's office contacted Express via telephone and gave it a prescription to fill for the hormonal drug Ortho Novum; the prescription was for Giacomello. Although Ortho Novum is generally prescribed as a contraceptive, the purpose for which it was prescribed for Giacomello was to control her epileptic seizures. Plaintiff alleges that she had taken Ortho Novum for approximately two years; and in that period, her seizures had been brought under control.

After the call was received from Dr. Melnick's nurse, Express mailed Necon to Giacomello in New York. Necon is a Class A generic drug equivalent of Ortho Novum. Giacomello alleges that upon receiving the Necon, she telephoned Express and Empire to determine whether she should take Necon in lieu of Ortho Novum. According to Giacomello, an employee of Express informed her that there was no difference between Necon and Ortho Novum. Consequently, plaintiff began using Necon.

A copy of the Express "Telephone Prescription" form documenting the prescription transmitted by Dr. Melnick's nurse to Express, reveals that "Ortho Novum 28" was prescribed. However, the form does not indicate whether a generic drug could be used to fill the prescription or whether it was to be dispensed "as written."

## III. DISCUSSION

*Relevant Statutes*

New York State Education Law ("NY-SEL"), section 6816–a(1)(a) provides that:

1. A pharmacist shall substitute a less expensive drug product containing the same active ingredients, dosage form and strength as the drug product prescribed, ordered or demanded, provided that the following conditions are met:

(a) The prescription is written on a form which meets the requirements of subdivision six of section sixty-eight hundred ten of this article and the prescriber does not prohibit substitution, or in the case of oral prescriptions, the prescriber must expressly state whether substitution is to be permitted or prohibited. Any oral prescription that does not include such an express statement shall not be filled; ...

\* \* \* \* \* \*

2. In the event a patient chooses to have a prescription filed by an out of state dispenser, the laws of that state shall prevail.

Pennsylvania law, relevant to the substitution of generic drug equivalents for brand name prescription drugs, provides that "[i]n the case of an oral prescription, there will be no substitution if the prescriber expressly indicates to the pharmacist that the brand name drug is necessary and substitution is not allowed." Title 35 Pennsylvania Statutes § 960.3(a).

Unlike the New York statute, the Pennsylvania statute does not prohibit the filing of an oral prescription with a generic drug substitute for a brand name medication if the prescriber is silent on the issue of substitution.

*Choice–of–Law*

■ A federal district court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In New York, courts employ a governmental interest analysis in deciding choice-of-law issues in tort cases. *See Kramer v. Showa Denko K.K.*, 929 F.Supp. 733, 740 (S.D.N.Y.1996) Using this analysis, a court "must evaluate the nexus between each jurisdiction and the controversy in light of the policies and purposes to be vindicated by the conflicting laws." *Id.* Therefore, under New York law, "controlling effect is accorded to the law of the jurisdiction which has the greatest concern with, or interest in, the specific issue raised in the litigation." *Id.* (quoting *John v. Sotheby's, Inc.*, 858 F.Supp. 1283, 1289 [S.D.N.Y.1994]).

■ New York law distinguishes between laws that regulate primary conduct and those that allocate losses after the tort occurs. "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Cooney v. Osgood Machinery, Inc.*, 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 922, 612 N.E.2d 277 (1993). In addition, where "defendant's negligent conduct occurs in one jurisdiction and the plaintiff's injuries are suffered in another, the place of the wrong [for choice-of-law purposes] is considered to be the place where the last event necessary to make the actor liable occurred." *Kramer v. Showa Denko*, 929 F.Supp. at 741 (quoting *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 195, 491 N.Y.S.2d 90, 94, 480 N.E.2d 679 [1985] ).

■ In the case at bar, Express, a pharmacy in Pennsylvania, sent Necon to Giacomello, a resident of New York. Neither Giacomello nor her physician ever left the State of New York in connection with having the prescription at issue filled. Furthermore, it is uncontested that Giacomello received and ingested the drug, which allegedly caused her injuries, in New York. Consequently, the Court finds that New York is the situs of the last event necessary to make defendant liable for plaintiff's alleged injuries. Therefore, New York is the situs of the tort based on the instant choice-of-law analysis.

Since New York has the greater governmental interest in the issue raised in this litigation, it is necessary to analyze the NYSEL provision that governs the substitution of generic drug equivalents for brand name prescription drugs. As set forth above, NYSEL § 6816–a(2) provides that "[i]n the event a patient chooses to have a prescription filled by an out of state dispenser, the laws of that state shall prevail."

Defendant argues that NYSEL § 6816–a(2) is a de facto choice-of-law provision,

does not violate public policy and should be given effect. Therefore, defendant maintains that since Giacomello had her prescription filled by Express, a pharmaceutical dispenser located outside New York State, Pennsylvania law applies to this case.

Plaintiff contends that NYSEL § 6816–a(2) does not apply to this case because Express is not an "out of state dispenser." In support of this contention, plaintiff relies upon New York's long arm statute, New York Civil Practice Law and Rules ("CPLR") § 302(a). This statute grants a New York court personal jurisdiction over a non-domiciliary of New York who, *inter alia*, contracts to do business in New York. Plaintiff also contends that NYSEL § 6816–a(2) does not apply to this case because she did not "choose" to have her prescription filled by an out of state dispenser. She maintains that Empire made that decision for her by contracting with Express for its participation in Empire's prescription drug program.

■ The Court finds that plaintiff's reliance on CPLR § 302(a) is misplaced, since no controversy respecting the court's jurisdiction over a party exists for which reference to New York's long arm statute is needed. CPLR § 302(a) does not make an out-of-state pharmacy an in-state pharmacy as contemplated by the relevant provisions of the NYSEL. CPLR § 302(a) has no bearing on that issue. The relevant language in the NYSEL, "out of state dispenser," is clear and unambiguous; it refers to a prescription drug dispenser whose physical location is outside of New York State. Accordingly, the Court finds that Express, which is located in Pennsylvania, is an out of state pharmaceutical dispenser.

Furthermore, by selecting Empire as her health insurance carrier, Giacomello, in effect, made Empire her agent. By selecting Empire as her health insurance carrier, plaintiff authorized Empire to bargain with healthcare providers and pharmacies on her behalf, concerning the scope of services and products she would receive from the healthcare providers and pharmacies and the fees she would pay to them for their services and products. *See Finkelstein v. Aetna Health Plans of New York,* No. 95 Civ. 6631, 1997 WL 419211, at *5 (S.D.N.Y. July 25, 1997). Moreover, nothing in the record before the Court establishes that plaintiff was not free to obtain medication from a pharmacy not participating in the Empire plan, if she wished to do so. Therefore, the Court finds that Giacomello, with Empire acting as her agent, chose to have her prescription filled by Express, an out of state pharmaceutical dispenser. Under these circumstances, the Court finds that NYSEL § 6816–a(2) is applicable to the case at bar. It requires, based on the facts and circumstances in this case, that the law of Pennsylvania prevail; and so it shall.

The Court has considered plaintiff's remaining argument, that public policy militates against applying NYSEL § 6816–a(2) to this case, and finds it unpersuasive. The public policy of New York has been annunciated by its Legislature through the enactment of NYSEL § 6816–a(2). No application of the statute by the Court would contravene New York's public policy.

## IV. CONCLUSION

For the reasons set forth above, Pennsylvania law respecting the substitution of generic drugs for brand name drugs, when filling prescriptions, governs the instant action.

SO ORDERED.